[No. 14505-1-III.    Division Three.    July 18, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHNNIE WILL WITHERSPOON, JR., *Appellant*.

*Gregory D. Sypolt of Spokane Public Defender's Office,* for appellant.

*James R. Sweetser, Prosecuting Attorney,* and *Larry D. Steinmetz, Deputy,* for respondent.

SWEENEY, C.J. — The dispositive question presented in this case is whether a juror who admits being "a little bit prejudiced" because he reads in the newspapers and sees on television "a lot of black people who are dealing drugs" should have been stricken for cause. We conclude that he should have been and reverse the conviction.

## FACTS

Spokane Police Officer Terry Preuninger recognized the defendant, Johnnie W. Witherspoon, Jr., on sight because of previous encounters. Mr. Witherspoon is African American. On January 27, 1994, Officer Preuninger saw Mr. Witherspoon standing on the corner of First and Madison Streets in downtown Spokane—an area with a reputation for drug activity. Officer Preuninger ran a warrant check. Mr. Witherspoon had an outstanding warrant. Officer Preuninger approached Mr. Witherspoon to arrest him. He handcuffed Mr. Witherspoon and began to search him.

Mr. Witherspoon was cooperative. Officer Preuninger noticed he had something in his mouth. He asked Mr. Witherspoon to open his mouth; Mr. Witherspoon refused and started to chew.

Officer Preuninger saw what he thought were flakes of cocaine coming from Mr. Witherspoon's mouth. He knew that swallowing cocaine could be fatal and he ordered Mr. Witherspoon to spit the substance out. Mr. Witherspoon again refused and continued to chew and swallow. Officer Preuninger placed his hand on Mr. Witherspoon's throat "right up above his Adam's apple and pushed in above his Adam's apple to prevent him from swallowing." Officer Preuninger denied that his actions interfered with Mr. Witherspoon's ability to breathe. According to Officer Preuninger, not only could Mr. Witherspoon breathe, but he was talking and insisting he had nothing in his mouth at the same time. He also continued to swallow. Officer Preuninger took Mr. Witherspoon to a hospital, rather than jail, because he was convinced that Mr. Witherspoon had swallowed a "bunch of rock."

While en route to the hospital, Mr. Witherspoon spit in the patrol car. Officer Preuninger later collected a sample; it field tested positive for cocaine. Mr. Witherspoon was charged with possession of crack cocaine. He moved to suppress evidence of the cocaine. At the suppression hearing, he testified that Officer Preuninger had roughed him up, handcuffed him, and threatened to break his teeth with a flashlight if he did not open his mouth. Mr. Witherspoon also testified that he was coughing and could not breathe when the officer was pushing on his throat. Following the hearing, the trial court concluded that the officer had not used excessive force in effecting the arrest, or in obtaining the evidence, and that Mr. Witherspoon had voluntarily surrendered the evidence by spitting in the car.

Mr. Witherspoon appeals and raises three issues: (1) Whether his arrest was a pretext for the search; (2) whether the force used on Mr. Witherspoon to remove the

crack cocaine was excessive; and finally (3) whether the court should have granted his challenge for cause to Juror No. 3.

## DISCUSSION

Because, as we have noted, it is dispositive, we address the last issue first.

██ ██ Challenge for Cause. The denial of a challenge to a juror for cause is within the trial court's discretion. *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.2d 190 (1991). Mr. Witherspoon had a right to a trial by jury, and that right included an unbiased and unprejudiced jury. *State v. Parnell*, 77 Wn.2d 503, 508, 463 P.2d 134 (1969).

Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging . . . ." RCW 4.44.170(2). In the recent case of *State v. Jackson*, 75 Wn. App. 537, 879 P.2d 307 (1994), *review denied*, 126 Wn.2d 1003 (1995), a juror referred to African Americans as "coloreds" and told another juror that the worst part about a recent trip he took was that he had to associate with "coloreds." *Id.* at 540. He also commented that "[y]ou know how those coloreds are." *Id.* at 540. Division One of this court reversed, concluding that the juror revealed an aversion toward associating with African Americans and had a predisposition to make generalizations about them. *Id.* at 543.

██ The facts here are more compelling than those in *Jackson*. Juror No. 3 not only expressed concern about African Americans, he candidly admitted he was prejudiced:

When what you see in the newspaper, I have to admit I'm a little bit prejudiced. I see a lot of black people who are dealing drugs. When drugs are dealt, that's who is involved

unfortunately. I can't help it. I'm sorry. I'm that way. I see it in the papers all the time, and I can't help but be influenced.

The statement unequivocally concedes a prejudice against African Americans—a specific prejudice that they deal drugs. The very issue on which Juror No. 3 was being asked to pass was whether Mr. Witherspoon, an African American, possessed drugs. The prejudice, an actual prejudice, then goes to the very heart of Mr. Witherspoon's case. There were attempts to rehabilitate Juror No. 3, and he ultimately agreed that he would presume Mr. Witherspoon was innocent. That, however, does not go far enough to mitigate a categorical statement by a juror that he is prejudiced against African Americans because of what he has seen and read. The trial court, therefore, abused its discretion in denying Mr. Witherspoon's challenge for cause. We therefore reverse and remand for a new trial.

Because we remand for a new trial, we address Mr. Witherspoon's two other assignments of error.

Pretextual Search. Relying on *State v. Hobart*, 94 Wn.2d 437, 617 P.2d 429 (1980), Mr. Witherspoon argues that Officer Preuninger's stop was pretextual. But his reliance on *Hobart* is misplaced. There, the officer followed the defendant's car, which quickly turned up a street. The driver went to an apartment building. The officer recognized the driver as someone he had previously arrested and asked if he was lost. The officer then patted the defendant down and felt two spongy objects which he believed were balloons containing narcotics. *Id.* at 439-40. Like Officer Preuninger here, the officer in *Hobart* then checked for outstanding warrants. He found there were none. *Id.* at 440.

██ ██ Here, Mr. Witherspoon was approached and arrested only after Officer Preuninger discovered an outstanding warrant for Mr. Witherspoon. When there is a preexisting warrant, "the basis for the rule preventing use of a pretext arrest to search for evidence of another crime no longer exists." *State v. Davis*, 35 Wn. App. 724,

727, 669 P.2d 900 (1983), *review denied*, 100 Wn.2d 1039 (1984). The stop was not pretextual.

Excessive Force. Mr. Witherspoon next argues that his due process rights were violated under both the United States and the Washington State Constitutions because the force used by Officer Preuninger in seizing the evidence was unreasonable and excessive. He relies on *State v. Williams*, 16 Wn. App. 868, 871, 560 P.2d 1160, *review denied*, 88 Wn.2d 1018 (1977).

In *Williams*, police entered the defendant's home and shortly thereafter noticed that he was trying to swallow drugs. The defendant refused to open his mouth. An officer struck the defendant's hand away from a glass of water with a flashlight, grabbed his nose and chin, and opened his mouth. Another officer grabbed the defendant around the throat to prevent swallowing. The defendant was pinned to the couch while the officers used a spoon to extract balloons of heroin from his mouth. About 30 to 60 seconds elapsed, after the time the officers seized the defendant, until the heroin was retrieved. The defendant said he could not breathe while the officers held him. He did not, however, lose consciousness or need medical treatment. *Id.* at 869-70. The trial court found that the officers were choking the defendant so that he "could not and/or had extreme difficulty breathing" and suppressed the evidence. *Id.* at 870.

Williams is distinguishable for two reasons. First, the evidence used to convict Mr. Witherspoon came as a result of his voluntarily spitting in the patrol car, after he was arrested. Second, even if that were not the case, the trial court here found that during Officer Preuninger's search, Mr. Witherspoon's breathing was not obstructed and the force used was neither excessive nor unwarranted under the existing circumstances. The court accordingly did not err in denying Mr. Witherspoon's motion to suppress.

Reversed and remanded for a new trial.

THOMPSON and SCHULTHEIS, JJ., concur.

Review denied at 130 Wn.2d 1022 (1997).