[No. 15882-9-III.  Division Three.  October 29, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY CHRISTOPHER ALIRES, *Appellant*.

932

*Paul J. Wasson II*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Bruce Hanify, Deputy*, for respondent.

KURTZ, J. — Roy Christopher Alires was convicted of second degree burglary. He offers two reasons for reversing his conviction. First, he contends the court erred in giving an accomplice instruction. Second, he asserts he received ineffective assistance of counsel because his counsel allowed biased jurors on the jury panel.

## FACTS

Mr. Alires is a Hispanic. During defense counsel's voir dire, the following exchange took place:

Does anybody believe that Hispanics are more likely to commit crime in the Valley than other people?

Juror No. 22, shaking her head no.

Okay.

I've got some hands back here.

Juror No. 27, is that no?

Uh-huh.

THE JUROR: Me?

MR. BECKER: Yeah.

THE JUROR: Yes.

MR. BECKER: Okay.

So, I guess, do you have that perception or do you believe that?

THE JUROR: I feel that way, yes.

MR. BECKER: Do you feel – you feel that way. Okay.

Anybody else?

Juror No. 8?

THE JUROR: I think simply by reading the newspaper

and looking at the lists of crimes and the names, it seems that it's pretty well heavy towards–uh–the Hispanic race, but also there are a lot of wonderful things that are happening with the Hispanic race. So we can't put them all in the same pot.

MR. BECKER: Juror No. 18.

Juror No. 20.

And who else raised their hands?

Juror No. 25.

Juror No. 29.

Uh–any of you that raised your hands, do you feel that you'd be unable to listen to the evidence in this case and make your decision based solely on the evidence rather than any preconceived idea that you might have about Hispanics?

Anybody feel that they couldn't do that?

Okay.

No further discussion was held with these jurors regarding their beliefs about Hispanics and crime. Of these jurors, number 8 was excused, and numbers 18, 20, 25 and 27 were impaneled.

Mr. Alires was tried on a charge of second degree burglary. At trial, several police officers testified they responded to a call of burglary in progress at a business located at 102 S. Naches, Yakima. Officers Anthony Patlan and Andrew Voline were the first to arrive. Officer Voline heard scraping noises, "like something scraping against the side of a building" and then running. He saw two people running toward a fence on the property. He yelled at them to stop. One of the individuals climbed the fence while the other waited. Officer Voline told the suspects to come back or he would shoot them. One of the suspects ran back toward him and the other cleared the fence and ran away. The suspect who returned to the officer was Mr. Alires, who was then placed in custody. Officer Voline noticed Mr. Alires's dark-colored clothing had a white-colored substance

on it that looked like paint, but the clothing was never tested. Officer Patlan eventually caught the other suspect, Bobby Trudeau.

Officer Voline went inside the building and observed that radio and speaker equipment had been moved from one office to another room with an open window. The window sill was painted white. A folding metal chair was just outside the open window. Officer Gregory Finch noticed a black portable stereo with two silver antennas sitting in the bushes directly inside the fence. He also saw a television sitting on top of the chair, which seemed to be out of place. None of the officers saw Mr. Alires inside the building.

Mr. Alires's sole witness was his wife, Maria Perez. She testified Mr. Alires had been working in the garage, which is painted white in some areas.

Mr. Alires took exception to instruction number 7, an accomplice instruction, given to the jury. He contended there was no evidence to support the instruction. Mr. Alires was found guilty. He appeals.

## ANALYSIS

Did the trial court err in giving an accomplice instruction? Mr. Alires contends the State failed to prove he associated himself with, and participated in, the enterprise with Mr. Trudeau. He argues the evidence shows he was at the scene and tried to flee from it. He points to the lack of evidence supporting any connection with Mr. Trudeau or that he was acting in concert with him. He asserts that because the jury could not have found him guilty on the accomplice theory, it was error to give it.

■■ Under an accomplice theory, the State must prove the substantive crime was committed and the accused acted with knowledge he was aiding in the commission of the offense. RCW 9A.08.020(3); *State v. Carothers*, 84 Wn.2d 256, 264, 525 P.2d 731 (1974), *overruled on other grounds by State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984). As long as there is sufficient evidence to support an accom-

plice instruction, jurors are not required to determine which participant acted as a principal and which acted as an accomplice. *State v. Hoffman*, 116 Wn.2d 51, 104-05, 804 P.2d 577 (1991). Instead, jurors need conclude unanimously only that both the principal and accomplice participated in the crime, but need not be unanimous as to the manner of that participation. *Id.* at 104.

Here, the evidence indicates Mr. Alires was present at the scene with Mr. Trudeau; they both tried to flee together. Radio and speaker equipment had been moved to a room with an open window. A television was on a chair under an open window, and a portable stereo was outside in the bushes. When Officer Voline arrived at the scene, he heard scraping noises and saw two people running from the building. He also noticed the window sill was painted white, and Mr. Alires had what looked like white paint smeared on his dark clothing. Mr. Alires was sweating profusely when he ran the short distance back to Officer Voline. Given Mr. Alires's appearance, presence at the scene and his behavior, it is reasonable to infer Mr. Alires knowingly aided in the commission of the offense.

■ A jury instruction may be given if it is a correct statement of the law and evidence exists to support giving the instruction. *State v. Benn*, 120 Wn.2d 631, 654, 845 P.2d 289 (1993). The court did not err in giving the accomplice instruction.

Mr. Alires contends he suffered from ineffective assistance of counsel because his lawyer failed to challenge several jurors for cause after they admitted they were biased against Hispanics. During voir dire, his counsel asked if these jurors would be unable to decide the case based solely on the evidence rather than their preconceived stereotypes of Hispanics. Mr. Alires states that even though none of the jurors responded to this question, his counsel allowed all of them to remain on the panel.

Actual bias is the "existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person

cannot try the issue impartially and without prejudice to the substantial rights of the party challenging[.]'' RCW 4.44.170(2). The issue of actual bias goes to whether a particular juror's state of mind is such that he or she can try a case impartially and without prejudice to a party. *Brady v. Fibreboard Corp.*, 71 Wn. App. 280, 283, 857 P.2d 1094 (1993), *review denied*, 123 Wn.2d 1018 (1994). "Prejudice" is defined as "[a] forejudgment; bias; partiality; preconceived opinion. A leaning towards one side of a cause for some reason other than a conviction of its justice." BLACK'S LAW DICTIONARY 1061 (6th ed. 1990).

In *State v. Jackson*, 75 Wn. App. 537, 879 P.2d 307 (1994), *review denied*, 126 Wn.2d 1003 (1995), the court reversed a conviction where a juror revealed an aversion to associating with African Americans and had a predisposition to make generalizations about them. The juror referred to African Americans as "coloreds" and told another juror that the worst part about a recent trip he took was that he had to associate with "coloreds." The court held the statements, taken as a whole, created a clear inference of racial bias and a predisposition toward making generalizations about African Americans as a group. *Id.* at 543. The court held that, presumptively, the statements demonstrated the juror had certain discriminatory views which could affect his ability to decide the case fairly and impartially. *Id.*

In *State v. Witherspoon*, 82 Wn. App. 634, 637-38, 919 P.2d 99 (1996), *review denied*, 130 Wn.2d 1022 (1997), this court reversed a conviction and remanded for a new trial where a juror admitted the following in voir dire:

> "When what you see in the newspaper, I have to admit I'm a little bit prejudiced. I see a lot of black people who are dealing drugs. When drugs are dealt, that's who is involved unfortunately. I can't help it. I'm sorry. I'm that way. I see it in the papers all the time, and I can't help but be influenced."

This court found the statement "unequivocally concedes a prejudice against African Americans—a specific prejudice that they deal drugs" and at issue was whether Mr. With-

erspoon possessed drugs. *Id.* at 638. Thus, the court found the trial court erred in denying a challenge for cause because the juror was biased.

In this case, we are presented with a more general admission of prejudice. In response to the question, "Does anybody believe that Hispanics are more likely to commit crime in the Valley than other people," six jurors raised their hands, but only one spoke and she was not seated on the panel. The other jurors were not questioned, other than to ask if they could decide the case on the evidence, and not their prejudices. It is not clear from the record, but it is reasonable to infer these jurors did not raise their hands, thus indicating they would be impartial and fair.

The test for whether a criminal defendant was denied effective assistance of counsel is if, after considering the entire record, it can be said the accused was afforded effective representation and a fair and impartial trial. *State v. Thomas*, 71 Wn.2d 470, 471, 429 P.2d 231 (1967). Under this standard, the defendant is not guaranteed successful assistance of counsel. *State v. Adams*, 91 Wn.2d 86, 90, 586 P.2d 1168 (1978). To establish ineffective assistance of counsel, the defendant bears the burden of proving two things: First, considering the entire record, that he or she was denied effective representation, and, second, that he or she was prejudiced by such ineffectiveness. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (adopting the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If a defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for a claim the defendant did not receive effective assistance of counsel. *Adams*, 91 Wn.2d at 90.

In *Jackson* and *Witherspoon*, the jurors who should have been disqualified exhibited clear prejudice and presumptively an inability to decide the case fairly and impartially. These jurors were challenged and should have been removed from the jury. In Mr. Alires's case, the jurors who were questioned, but not challenged, did not exhibit

the clear prejudice evident in *Jackson* and *Witherspoon*. Rather, they can be characterized as jurors with preconceived ideas who need not be disqualified if they can put these notions aside and decide the case on the basis of the evidence given at trial.

Having asked the questions about Hispanics, Mr. Alires's trial counsel made a legitimate trial decision not to pursue the topic. The jurors having indicated that they would be fair and impartial, he understood it was unlikely the court would disqualify these jurors. Rather than risk further antagonism by challenging the jurors, counsel elected not to pursue the matter and accept the jurors. While other counsel may have taken a more aggressive and riskier approach to the questioning of these jurors, Mr. Alires's defense counsel's trial conduct can be characterized as legitimate trial strategy. For that reason, it cannot serve as a basis for a claim Mr. Alires did not receive effective assistance of counsel.

The judgment of the trial court is affirmed.

SWEENEY, J., concurs.

SCHULTHEIS, C.J. (dissenting) — I disagree with the majority's determination that Roy Alires received effective assistance of counsel during jury selection. The majority reasons the record evidenced only a general admission of prejudice by potential jurors, cured by an apparent lack of further response by the four jurors who were later impaneled. The majority believes that no prejudice occurred because the one juror who spoke out was not seated on the panel.

When these four jurors were questioned about whether they could decide the case on the evidence and not their prejudices, their answers were nebulous. The majority admits the record is not clear regarding the responses of these jurors. However, what *is* clear from the record is that Mr. Alires's counsel did not individually question these four jurors. Instead, Mr. Alires's counsel asked the follow-

ing closed-ended question: "Uh–any of you that raised your hands, [to the question of whether they believed Hispanics were more likely to commit a crime in the Valley than other people] do you feel that you'd be unable to listen to the evidence in this case and make your decision based solely on the evidence rather than any preconceived idea that you might have about Hispanics?" When there was apparently no response, Mr. Alires's counsel proceeded with voir dire and did not challenge any of these jurors.

Mr. Alires is entitled to a trial before an unbiased jury. *State v. Witherspoon*, 82 Wn. App. 634, 637, 919 P.2d 99 (1996), *review denied*, 130 Wn.2d 1022 (1997). Under the facts of this case, four members of the jury admitted some type of bias against a specific ethnic heritage—Hispanics. Mr. Alires is Hispanic yet his attorney did not further investigate the possible biased attitude of the four jurors.

The majority takes a giant leap of faith by stating: "[I]t is reasonable to infer these jurors did not raise their hands, thus indicating they would be impartial and fair." Majority, at 938. The wording of the question itself could have been confusing to these four. Perhaps the jurors' silence was because they were replaying the question in their minds in order to give an honest response. The record does not tell us how long Mr. Alires's counsel waited for a response or whether the jurors looked confused or whether they were even paying attention to the question asked. There are so many unanswered questions that neither he nor we can say for certain that Mr. Alires was tried before an unbiased panel of jurors.

I agree with the majority that the test for ineffective assistance of counsel was set forth in *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (adopting the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Mr. Alires must first show his counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Second, Mr. Alires must show his counsel's errors during jury selection were so serious as to deprive him of a fair trial.

I believe Mr. Alires has met this burden. The fact that jurors exhibiting bias were not immediately challenged for cause may have been a legitimate trial strategy but that all four were eventually impaneled is the deficient performance by counsel warned of in *Thomas*. Having four admittedly prejudiced members on a jury of one's peers most certainly deprived Mr. Alires of a trial whose result was reliable. *Thomas*, 109 Wn.2d at 225-26; *Witherspoon*, 82 Wn. App. at 637. Accordingly, I would reverse and remand.