IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30651-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW SIMON GAROUTTE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Matthew Garoutte contends he was denied his constitutional right to trial by an impartial jury when the trial court refused to excuse a juror that he challenged for cause. He fails to show that the juror had any preconceived attitude toward him, however; he demonstrates only that the juror was concerned about enforcement of the crime with which Mr. Garoutte was charged. The trial court did not abuse its discretion in denying his challenge. He presents no viable issue in a statement of additional grounds. We affirm.

FACTS AND PROCEDURAL BACKGROUND

While serving a term of community custody, Matthew Garoutte received a home visit from community corrections officers who requested a urinalysis (UA). Mr. Garoutte told the officers that his UA would be dirty because he had recently taken pain pills. The

terms of his community custody provided that he could not consume a controlled substance without a prescription and must notify his community custody officer of any substance he was prescribed. The officers received approval to arrest him for the admitted violation and, in a search incident to arrest, recovered heroin from Mr. Garoutte's pocket. A search of his residence produced drug paraphernalia. Mr. Garoutte was charged with possession of heroin and use of drug paraphernalia.

Mr. Garoutte's only assignment of error is to the trial court's seating of a particular juror: "Juror 19." During the course of the court's preliminary questioning of the prospective jurors, Juror 19 was one of four who responded affirmatively when asked whether anyone had "close friends or family members who have been involved in a similar or related type of case or incident in any capacity." Report of Proceedings (RP) (Jan. 25, 2012) at 48.

Following the court's preliminary questioning, the prosecutor was given the next opportunity to question the venire and began with specific questions directed to the lowest-numbered prospective jurors. Toward the end of the 20 minutes he had been allowed for his initial questioning, he reached Juror 19, with whom he had the following exchange:

> [PROSECUTOR]: Number 19, you had raised your paddle that you had a friend or relative in that?
> JUROR NUMBER 19: Yeah, another first cousin.

2

> [PROSECUTOR]: Okay. And the same question I've been asking. Do you think that you would hold any biases towards the Department of Corrections because of that relative?
>
> JUROR NUMBER 19: Not toward the Department of Corrections so much. I would not . . .
>
> [PROSECUTOR]: Okay. With that answer I'm feeling that you're a little bit—you could be—have biases against somebody. So what would that be?
>
> JUROR NUMBER 19: Oh, just what I've observed with—mostly my cousin's friends and a blatant—some of the things they do involving drugs, how little is done law enforcement wise about it. You know, you—you just sit there wondering, you know, just how much does it take to actually get these people arrested in the first place where I can go on-line on Facebook and see, you know, his friends offering him, you know, "Hey, I can bring over a bag of whatever tonight" and nothing's done about it. That's frustrating.
>
> [PROSECUTOR]: Yes.

*Id.* at 74-75 (third alteration in original). At that point, the court notified the prosecutor that his 20 minutes were up.

At the outset of Mr. Garoutte's 20 minutes for questioning, he followed up on remarks by several jurors, when questioned by the prosecutor, that Mr. Garoutte looked guilty to them.[1] The following exchange occurred:

> [DEFENSE COUNSEL]: Okay. How many people who said that Matthew looks guilty right here and right now think that it would be better if there was another juror sitting on the jury?
>
> Juror Number 4, Number 3. Okay.

---

[1] Juror 3, for example, was asked by the prosecutor whether the defendant appeared to the juror to be guilty or not guilty, and answered, "Guilty." RP (Jan. 25, 2012) at 56. Juror 4 responded to similar questioning by saying, "Just the appearance would be guilty." *Id.* at 57. Juror 8 likewise answered that the defendant appeared guilty. *Id.* at 62.

(Prospective jurors raising paddles.)

[DEFENSE COUNSEL]: Matthew is standing behind the eight ball with you folks, correct? I mean, in all honesty. I mean that there's some bias.

Look, when we talk about biases it's a simple thing. I hate the Pittsburgh Steelers. I love the Green Bay Packers. And I have since I was a kid. But I don't like—I never liked Bill Powers. Maybe it's just the way he looks. I don't know, you know. Okay.

So those folks who raised their paddles that Matthew is starting behind the eight ball—

If I could see those paddles again, please.

*—do you think it would be fair if you sat on the jury for Matthew?*

(Prospective jurors raising paddles.)

[DEFENSE COUNSEL]: Your Honor, I'm going to move for cause—

Would those folks show me the paddles again, please.

(Prospective jurors raising paddles.)

[DEFENSE COUNSEL]: —on Jurors Number 3, 4, 18, 19, 20 and 22 that in this situation they could not be fair to Mr. Garoutte if they were on the panel.

THE COURT: *What was your specific question to them that they raised their paddle to?*

[DEFENSE COUNSEL]: There was a couple of questions I went through, Your Honor. Again, I think it's: As Matthew sits here he looks guilty to them, that he's—essentially if they were seated as jurors that he would be starting behind the eight ball lest they couldn't really be fair. And I suspect that they could not, given the honesty of their answers, follow the burden of proof and the principles of presumption of innocence because clearly he's not presumed innocent in their eyes.

THE COURT: Well, I don't think that each of those statements that you just made can be attributed to each of those jurors. There have been some jurors that have made some of those statements. But to say all those jurors have made all those statements is inaccurate. So *based upon the last question you asked, I would deny it.* You can make your challenge for cause later if you would like to based upon earlier questions. And we can go line by line with each one.

[DEFENSE COUNSEL]: Okay.

THE COURT: So I'm not precluding any of those jurors from being excused. But just based upon the last question it's a "no".

4

*Id.* at 77-79 (emphasis added).

Mr. Garoutte's lawyer then examined prospective jurors 3, 4, and 8. His first question to juror 8 was whether she raised her paddle early on "when [the prosecutor] was talking about drugs and given the fact that it's a drug charge that you would have a bias?" to which she answered, "No, I don't believe so." *Id.* at 80-81. His next question, to all the prospective jurors, was, "Okay. Anybody else raise their paddle?" *Id.* at 81.

Juror 19 evidently did not, because following that question to the venire, Mr. Garoutte's lawyer questioned only juror 11. He then told the court he had no further questions.

The State continued voir dire, beginning its questioning with juror 20.

At the conclusion of the voir dire, the trial court entertained any challenges for cause. When asked for Mr. Garoutte's challenges, his lawyer answered, "I think it was 3, 4, 18, 19. That's all I can remember, sir." *Id.* at 90. The trial court suggested that jurors 9 and 11 could raise defense concerns and, after Mr. Garoutte's lawyer agreed, ruled that it would excuse jurors 3, 4, 9, and 11. The court denied Mr. Garoutte's challenges to jurors 18 and 19, stating, "I couldn't ascertain from their answers that there would be a basis to excuse them for cause." *Id.* at 92.

The trial court excused a total of six jurors for cause. Mr. Garoutte exercised his six preemptory challenges on jurors 13, 16, 23, 27, 30, and 34. Jurors 30 and 34 were outside the range of potential jurors; juror 28 was the last juror seated.

The jury found Mr. Garoutte guilty on both counts. He appeals.

## ANALYSIS

Mr. Garoutte contends that the trial court denied his constitutional right to an impartial jury by denying his challenge for cause to Juror 19.

The Sixth and Fourteenth Amendments to the United States Constitution, as well as article I, section 22 of the Washington Constitution, guarantee a criminal defendant the right to trial by an impartial jury. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012) (citing *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975)), *petition for review filed*, No. 12-9685 (U.S. Apr. 5, 2013). To ensure this right, a juror will be excused for cause if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *State v. Brett*, 126 Wn.2d 136, 157, 892 P.2d 29 (1995). A challenge for cause may be based upon either actual or implied bias. RCW 4.44.170; *State v. Cho*, 108 Wn. App. 315, 324, 30 P.3d 496 (2001).

Implied bias is presumed from the factual circumstances. *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.2d 190 (1991); *see* RCW 4.44.180. Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party,

which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). "'Prejudice' is defined as '[a] forejudgment; bias; partiality; preconceived opinion. A leaning towards one side of a cause for some reason other than a conviction of its justice.'" *State v. Alires*, 92 Wn. App. 931, 937, 966 P.2d 935 (1998) (alteration in original) (quoting BLACK'S LAW DICTIONARY 1079 (6th ed. 1990)).

Actual bias must be established by proof. *Noltie*, 116 Wn.2d at 838. The critical inquiry is whether a juror with preconceived ideas can set them aside and decide the case on an impartial basis. *State v. Wilson*, 141 Wn. App. 597, 606-08, 171 P.3d 501 (2007). More than a possibility of prejudice must be shown. *Noltie*, 116 Wn.2d at 840 (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE: CIVIL § 202, at 331 (4th ed. 1986)). A juror whose initial responses indicate actual bias can be rehabilitated by affirmative responses to thorough and thoughtful inquiry. *State v. Fire*, 100 Wn. App. 722, 728-29, 998 P.2d 362 (2000), *rev'd on other grounds*, 145 Wn.2d 152, 34 P.3d 1218 (2001).

We review a trial court's ruling on a challenge for cause for manifest abuse of discretion. *Davis*, 175 Wn.2d at 312. "The reason for this deference is that the trial judge is able to observe the juror's demeanor and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial." *State v. Gentry*, 125 Wn.2d 570, 634, 888 P.2d 1105 (1995). If a juror should

7

have been excused for cause, but was not, the remedy is reversal. *City of Cheney v. Grunewald*, 55 Wn. App. 807, 810, 780 P.2d 1332 (1989).

Mr. Garoutte characterizes Juror 19 as "expound[ing] at length about how the police normally don't do enough to arrest drug users like Mr. Garout[t]e," that he "condemned those he suspected of drug use as breaking the law openly, and admitted he would accordingly tend to be unfair in assessing the guilt of alleged drug users such as the accused defendant" and "[agreed] that it would not be fair to have him sit as a juror . . . based on a strong feeling that alleged drug users should be arrested more aggressively." Br. of Appellant at 4, 9. He likens the facts of his case to those in several reported cases in which courts were held to have abused their discretion in failing to excuse jurors who, e.g., admitted prejudice against African-Americans charged with dealing drugs, *State v. Witherspoon*, 82 Wn. App. 634, 919 P.2d 99 (1996); admitted regarding the defendant on trial as a "'baby raper,'" who "'should just be severely punished,'" *Fire*, 100 Wn. App. at 724; or admitted that she would find it difficult to disbelieve a police witness who she presumed would tell the truth, and did not know whether a defendant was entitled to a presumption of innocence if a police officer testified against the defendant. *State v. Gonzales*, 111 Wn. App. 276, 45 P.3d 205 (2002).

The record does not bear out Mr. Garoutte's argument that Juror 19 agreed that it would not be fair for him to sit as a juror. Mr. Garoutte's lawyer asked a series of

questions. The first was, "How many people who said that Matthew looks guilty right here and right now think that it would be better if there was another juror sitting on the jury?" The second was, "So those folks who raised their paddles that Matthew is starting behind the eight ball—If I could see those paddles again, please." But the last was, "[D]o you think it would be fair if you sat on the jury for Matthew?"

The record is not clear when Juror 19 raised his paddle, other than that he was not one of the first. It appears from the record, and evidently appeared to the court, that Juror 19 might have been raising his paddle to answer "yes" to the last question: whether it would be fair if he sat on the jury.

Mr. Garoutte's appellate lawyer evidently believes that the third question was somehow tied to the prior questions, such that, if Juror 19 raised his paddle in response to "[D]o you think it would be fair if you sat on the jury for Matthew?" he was actually signifying "no," not "yes." But here is where the trial court was in the best situation to observe the course of the questioning and assess what the jurors were, or might have been, conveying by their response. The trial court recognized and pointed out to Mr. Garoutte's lawyer that jurors raising their paddles during his questioning had not necessarily signified bias, given his last question. It invited Mr. Garoutte's lawyer to follow up with individual jurors to clarify what their paddle raise had meant. Mr. Garoutte's lawyer chose not to follow up with Juror 19.

9

It is also unreasonable to analogize Juror 19's expression of a general concern with open drug use and insufficient enforcement of drug laws to the juror bias presented in *Witherspoon, Fire,* and *Gonzales.* In the three cases relied upon by Mr. Garoutte, the jurors challenged for cause admitted to a bias that would predispose them to convict the defendants for reasons unrelated to a fair consideration of the evidence. Juror 19 revealed no predisposition to find Mr. Garoutte to be a drug user. He only revealed his attitude about the crime with which Mr. Garoutte was charged.

Mr. Garoutte was free to exercise a peremptory challenge on the theory that a juror who does not like the crime will not like a defendant charged with the crime. But this presents a mere possibility of bias. A prospective juror's belief that a particular crime is serious and insufficiently enforced does not, standing alone, disqualify him or her from serving.

As the State also points out, the trial court asked during its preliminary questioning "for any reason, be it political, social, religious or otherwise, you would have difficulty doing that to apply the law?" and asked, "Is there anything about this particular case, perhaps something I haven't touched on, that would cause you to begin this trial with feelings, tendencies, or leanings one way or the other?" RP (Jan. 25, 2012) at 50-51. Juror 19 did not answer "yes" to either question. Mr. Garoutte's lawyer discounts the significance of these questions and answers because they occurred at the outset of voir dire and could not be pointed to as rehabilitating Juror 19. We do not believe Juror 19

ever needed to be rehabilitated. The fact that Juror 19 did not answer "yes" to either of the court's questions undercuts Mr. Garoutte's argument that he could not be impartial.

Mr. Garoutte fails to demonstrate that the trial court manifestly abused its discretion in denying the challenge for cause.[2]

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Garoutte states two. His first is, "Was not given the report filed by Abel Andrade in discovery. Never received it. Still have not saw [sic] it." SAG at 1. His second is, "Tim Logan admitted to not signing evidence in and out of [Department of Corrections] evidence locker. Was .9 gram when placed in locker at time [of] arrest. Was .2 gram when it got to Washington State Crime Lab." *Id.*

Abel Andrade is one of the community corrections officers who conducted the home visit that led to Mr. Garoutte's arrest. Mr. Andrade testified at trial. During cross-examination, Mr. Andrade testified that he had created a report or log entry of the home visit. Mr. Garoutte's lawyer commented while questioning Mr. Andrade that he had

---

[2] The parties touch on an interesting issue as to whether Mr. Garoutte waived the impartial jury issue by exercising two of his peremptory challenges on jurors outside the range of potential jurors—arguably the equivalent of not exercising them at all. Our Supreme Court declined to reach a similar issue in *City of Bothell v. Barnhart*, 172 Wn.2d 223, 234-35, 257 P.3d 648 (2011). Because this case can be resolved on the basis of an inadequate showing of bias and the State only mentions the issue but does not analyze it, we decline to reach it as well.

never received Mr. Andrade's report or that of the other community corrections officer who participated in the home visit.

Timothy Logan is also a community corrections officer and was the evidence control officer at the time of Mr. Garoutte's arrest. He participated in the search of Mr. Garoutte's residence and eventually forwarded the heroin seized from Mr. Garoutte to the state crime lab. During cross-examination at trial, he conceded that in forwarding the heroin to the state crime lab, he neglected to fill out and initial a form that is supposed to be completed and initialed on transmission and return.

Mr. Garoutte's SAG repeats this evidence presented during trial and that his lawyer urged the jury to bear in mind in determining whether the State met its burden of proof beyond a reasonable doubt. During closing, his lawyer argued:

> I'm a grouchy old man for several reasons. But in this case I'm grouchy because we didn't get the report from Mr. Andrade, Abel Andrade. Didn't get the report until the date of the trial from Tim Logan. Not until the date of trial. There's something interesting too about that. And Tim Logan says he weighed it at .1 gram. The State crime lab came in here. They weighed it at .1 gram. I had to look it up. What is .1 gram? .1 gram actually equates to a paperclip. Of course, the question is: Where did the other 7 grams go to? Makes me grouchy when we get a report where the standard operating procedure is to initial or sign that you sent material to the crime lab, and it's not. There's a question there.
>
> When you have a standard operating procedure where you're supposed to initial or sign when you receive the material back from the crime lab and it's not, there's a question there.

RP (Jan. 26, 2012) at 57-58.

No. 30651-8-III
*State v. Garoutte*

The jury rejected Mr. Garoutte's argument that this evidence created reasonable doubt. Mr. Garoutte's SAG fails to present analysis, authority, or citation to the record on the basis of which we should consider these matters further. Although he is not required to cite to the record in a SAG, he must inform the court of the "nature and occurrence of alleged errors." RAP 10.10(c).

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, C.J.

Brown, J.

13