IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85794-1-I |
| Appellant, | |
| v. | DIVISION ONE |
| ALEXIS CORTEZ-DOMINGUEZ, | UNPUBLISHED OPINION |
| Respondent. | |

CHUNG, J. — The State charged Alexis Cortez-Dominguez and two others with five counts of assault in the first degree with a deadly weapon after a shooting left five people injured. Cortez-Dominguez filed a Knapstad[1] motion to dismiss based on insufficient evidence to establish a prima facie case for the charges. The State argued that Cortez-Dominguez was an accomplice to his codefendants who allegedly fired the weapons. The trial court granted the motion and dismissed the charges, and the State appealed. We conclude that the State failed to establish a prima facie case for accomplice liability and affirm.

FACTS[2]

On July 17, 2022, Cortez-Dominguez drove himself and his two codefendants, J.T. and A.M.-T.,[3] to a Walmart in Mount Vernon, Washington.

---

[1] State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986).

[2] In a pretrial Knapstad motion, the trial court examines the sufficiency of the evidence based on the facts in the affidavit. State v. Carter, 138 Wn. App. 350, 366, 157 P.3d 420 (2007). Unless specifically denied by the prosecution, facts alleged in the defendant's affidavit are deemed admitted. Knapstad, 107 Wn.2d at 356. The facts herein are taken from the evidence produced by Cortez-Dominguez and the State for the Knapstad motion.

They all entered the store together. Security camera footage shows A.M.-T. and J.T. walking into the store "with at least one hand in their respective pockets in a protected manner consistent with secreting an object such as a firearm." Law enforcement later identified the three as members of the Sureños gang.

A separate group of six young males, at least two of whom were part of the Norteños gang, was also in the store, and the two groups walked around "as if following one another for less than 10 minutes." The two groups met in the northwest corner of the store. J.T. and/or A.M.-T. fired shots, wounding three people from the other group, a 76-year-old bystander, and a security guard. Cortez-Dominguez was in the aisle where shell casings were later found from a semiautomatic weapon. The parties do not dispute that Cortez-Dominguez did not have a firearm and did not fire any shots. After the shots were fired, Cortez-Dominguez and A.M.-T. "were seen running down the second aisle together where one of the firearms was used." Cortez-Dominguez and J.T. "converge[d]" and "push[ed] into each other and then beg[a]n running in separate directions."

Cortez-Dominguez exited the store and returned to his vehicle. "Instead of immediately leaving the parking lot, defendant dr[ove] around as though he [wa]s looking for [J.T.] and [A.M.-T.]. After not seeing them, he exit[ed] the parking lot."

The victims all survived their injuries. Based on the store's surveillance videos, the police identified Cortez-Dominguez, A.M.-T., and J.T. and charged them each with five counts of assault in the first degree with a deadly weapon.

---

[3] Because J.T. and A.M.-T. were minors at the time this appeal was filed, we use their initials.

Cortez-Dominguez filed a Knapstad motion to dismiss the charges. The State argued in response that Cortez-Dominguez was liable for the five counts of assault in the first degree as an accomplice.[4]

During the initial hearing on the Knapstad motion, the trial court inquired whether the State had any evidence that Cortez-Dominguez and the two codefendants planned the shooting. The prosecutor responded, "The State does not believe there is going to be any evidence that they went to Walmart with the intention to conduct the shooting." The court then asked whether the State had evidence that Cortez-Dominguez knew that A.M.-T. and J.T. had guns, to which the prosecutor responded that police would testify that A.M.-T. and J.T. visibly appeared to be carrying guns and the three were in the same gang. The State then argued that disputed material facts required denial of the motion to dismiss:

> I think it's two groups knowing each other or who they are; knowing that there were weapons possessed by the other two defendants; it would be that he was with them at the time of the shooting; that he attempted to flee with at least one of them following the shooting; that he gets into the car, waits for them in the car; drives around the parking lot in a manner that looks like he's trying to find them; finds another parking spot, parks, waits again to see if they are coming out and then leaves the store only at that point.

At the conclusion of the hearing, the court found that the State had failed to establish direct evidence of knowledge of the crime to support accomplice liability:

> It is clear that there will be no direct testimony offered by State that the defendant knew the two co-defendants were armed. It is clear that there will be no direct testimony that the defendant and the two

---

[4] The State did not argue that Cortez-Dominguez was the principal in any of the five charged assaults.

> co-defendants went to Walmart to confront six individuals who confronted them. It is clear there will be no direct testimony the defendants and the co-defendants went to Walmart to commit any crime. This Court is concerned that the Prosecutor may be trying to argue the defendant first is associated with a gang and that other[s] associated with that gang had a gun at Walmart; therefore the defendant had to know that his co-defendants were armed because that's what gang members do, according to the testimony offered by the State. That is not evidence. That's guilt by association.

Based on the lack of direct testimony, the trial court expressed concern about whether evidence of Cortez-Dominguez waiting at the scene of the crime for his codefendants supported accomplice liability. The court reserved ruling and requested additional briefing and oral argument on the issue of "accomplice liability for a driver who waited or returned to the scene looking for his codefendants."

At the second hearing, the trial court considered the additional briefing and the evidence presented and concluded as follows:

> There is no evidence, and instead only speculation that Alexis Cortez-Doming[uez] and his two co-defendants went to Walmart with any intent to commit any crime. There is no evidence and instead only speculation that Alexis Cortez-Dominguez went to Walmart with any intent to commit any crime. There is no evidence, but instead only speculation that Alexis Cortez-Dominguez had knowledge that either of his co-defendants had any intent to commit any crimes. Indeed there is no evidence that the two co-defendants had any intent to commit any crime before they were confronted by the other group in Walmart, as shown in the video.

Because the State's case was based on speculation, rather than facts and evidence, the trial court granted the motion and dismissed the five counts of assault in the first degree.

The State appeals.

4

DISCUSSION

The State challenges the trial court's dismissal of the assault charges against Cortez-Dominguez pursuant to a Knapstad motion. According to the State, the trial court erred by improperly weighing evidence and granting the motion when material facts remain in dispute. Cortez-Dominguez argues the court properly dismissed the charges because the State failed to establish a prima facie case of accomplice liability. We agree with Cortez-Dominguez.

"Under Knapstad, a defendant may move to dismiss a criminal charge on the ground that there are no disputed material facts and the undisputed facts do not establish a prima facie case of guilt as a matter of law." State v. Bauer, 180 Wn.2d 929, 935, 329 P.3d 67 (2014). To survive a Knapstad motion, the State "must provide at least some evidence supporting each element of the crime charged to merit consideration by a jury." State v. Montano, 169 Wn.2d 872, 879, 239 P.3d 360 (2010). "If material factual allegations in the motion are denied or disputed [by the State], denial of the motion to dismiss is mandatory." Knapstad, 107 Wn.2d at 356. In reviewing a motion to dismiss, the trial court must view the evidence and all reasonable inferences in the light most favorable to the State. CrR 8.3(c)(3). The court may not weigh evidence or assess credibility. CrR 8.3(c)(3). We review de novo a trial court's decision on a Knapstad motion. Bauer, 180 Wn.2d at 935.

The State charged Cortez-Dominguez with five counts of assault in the first degree premised on his role as an accomplice to the two juvenile shooters. An accomplice to a crime "knowingly '[s]olicits, commands, encourages, or

requests' the commission of the crime or '[a]ids or agrees to aid' in the planning or commission thereof." State v. Sullivan, 18 Wn. App. 2d 225, 244, 491 P.3d 176 (2021) (quoting RCW 9A.08.020(3)(a)). The State must prove that the defendant was ready to assist in the crime and shared the criminal intent of the principal. State v. Truong, 168 Wn. App. 529, 540, 277 P.3d 74 (2012). "Mere presence of the defendant without aiding the principal—despite knowledge of the ongoing criminal activity—is not sufficient to establish accomplice liability." Id. "However, '[a]id can be accomplished by being present and ready to assist.' " Sullivan, 18 Wn. App. 2d at 244 (quoting State v. Collins, 76 Wn. App. 496, 501-02, 886 P.2d 243 (1995)).

Citing Sullivan, the State argues that Cortez-Dominguez was an accomplice because he was ready to assist A.M.-T. and J.T. Sullivan involved a robbery in which the principal punched a man to the ground and Sullivan, armed with a firearm, "moved to a position whereby—standing at the victim's feet—he loomed over the victim as and after [the principal] beat the victim while he was on the ground." 18 Wn. App. 2d at 244. This evidence supported accomplice liability for robbery, because a rational trier of fact could infer that "by being so armed and positioned, Sullivan either was ready to assist or intended to encourage [the principal] in using force to take property from the victim's wallet." Id.

According to the State, "Cortez-Dominguez was standing with A.M.-T. and J.T. when one or both of them shot at least four of the five victims. This would have put Cortez-Dominguez in an active position where he would have been able to assist, encourage, or otherwise aid them in the shooting and its aftermath."

6

However, other than his presence at the Walmart with J.T. and A.M.-T., the State produced no evidence that Cortez-Dominguez shared their criminal intent. He was not armed, and unlike the defendant in Sullivan, there is no evidence that he was positioned or in any other way "ready to assist" or encourage A.M.-T. or J.T. in the shootings. His mere presence at the scene with his codefendants fails to demonstrate a prima facie case of accomplice liability.

The State also points to evidence that Cortez-Dominguez initially fled with A.M.-T. and appeared to wait and look for A.M.-T. and J.T. by driving around the parking lot and waiting in a few different parking spots before departing. The State relies on State v. Alires, 92 Wn. App. 931, 966 P.2d 935 (1998), for its contention that attempting to flee with the principal is sufficient to support a conviction under accomplice liability. In Alires, officers responding to reports of a burglary in progress at a business heard scraping noises and saw two people running toward a fence on the property. 92 Wn. App. at 934. When told to stop, Alires ran back to the officers, while the other individual kept running. Id. One officer noted that Alires had a white substance that appeared to be paint on his dark-colored clothing. Id. at 934-35. The evidence indicated Alires was present at the scene, the officer saw two people running from the building, the window sill was painted white, and Alires had what looked like white paint smeared on his dark clothing. Id. at 936. The court concluded, "Given Mr. Alires's appearance, presence at the scene and his behavior, it is reasonable to infer Mr. Alires knowingly aided in the commission of the offense." Id. at 936.

7

But Alires's flight by itself did not allow for the inference of accomplice liability. Alires was charged with burglary in the second degree, which requires proof that "with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). In the context of the burglary charge, his flight from the building and the white substance on his pants consistent with the paint on the window sills allowed for the inference that he had been in the building unlawfully and attempted to enter and/or escape through the window when law enforcement arrived and, thus, had participated in the offense. In contrast, Cortez-Dominguez's flight from the Walmart with his codefendants does not yield any inferences related to the elements of assault in the first degree. Thus, Alires does not support the State's broad claim that attempted flight with codefendants, without more, establishes a prima facie case of accomplice liability.

Finally, the State compares this case to State v. Rainwater, 75 Wn. App. 256, 876 P.2d 979 (1994), where the testimony conflicted as to whether the defendant knew her friends were going to engage in shoplifting. A security guard testified five women had entered the store together. Id. at 258. One member of the group left and the security guard overheard another woman say that she had "gone to get the car." Id. The guard looked into the parking lot and saw that Rainwater's car had been backed into a handicap parking spot near the entrance of the store. Id. Rainwater repositioned the car in front of the door after one of her friends came to speak with her. Id. Rainwater denied that she had parked in a handicap spot or moved the car. Id. A jury found her guilty of theft in the first

degree, and this court concluded that substantial evidence and reasonable inferences allowed a rational trier of fact could determine beyond a reasonable doubt "that Rainwater stood ready to aid the criminal enterprise by moving the getaway car up to the front door of the store, so as to be there when her friends ran from the store." Id. at 257 n.1.

In Rainwater, the State's case included evidence of communication between the defendant and her friends resulting in her repositioning the car to a more advantageous location while the theft was ongoing. By contrast, here, the State provided no evidence of similar communication or planning prior to or during the crime. In fact, the State acknowledged there was no evidence the defendants went to Walmart intending to conduct the shooting. Rather, Cortez-Dominguez is alleged only to have waited and looked for his codefendants, with whom he had arrived at Walmart, *after* the shootings had occurred. As Cortez-Dominguez points out, by that time, the assaults were completed crimes. Assisting in departing from the scene of a completed crime cannot be considered to be aiding in the commission of the offenses. Knowingly aiding a person after the commission of a crime is a separate crime, rendering criminal assistance. See RCW 9A.76.050. Rainwater does not support accomplice liability here merely because Cortez-Dominguez appeared to look for and wait for his friends after the shooting.

While the State contends that Cortez-Dominguez was actively engaged in the crimes, the evidence established that Cortez-Dominguez drove two friends to Walmart, walked through the store with them, witnessed a shooting, and looked

for his friends in the parking lot when he fled. Contrary to the State's claim, the trial court did not improperly weigh the evidence. Instead, the trial court separated the evidence and inferences from speculation to correctly conclude that the State failed to allege a prima facie case of five counts of assault in the first degree based on accomplice liability.

Affirmed.

_Chung, J._

WE CONCUR:

_Coburn, J._          _Mann, J._