[No. 47738-2-I.   Division One.   April 22, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL GONZALES, *Appellant*.

Cheryl D. Aza (of Washington Appellate Project), for appellant.

Norm Maleng, Prosecuting Attorney, and Randi J. Austell, Deputy, for respondent.

ELLINGTON, J. — In Daniel Gonzales' trial on charges of assault in the first degree, a biased juror was seated, and the prosecutor committed misconduct during closing argument. We reverse and remand for retrial.

Gonzales was charged with brutally assaulting Ghoshua Hoy during the early morning hours of March 15, 2000. Hoy suffered substantial injuries, including brain damage. He never saw his assailant(s) and was unable to identify Gonzales. The bulk of the evidence against Gonzales consisted of his own statements to police officers. He contends several errors occurred at trial.

■ *Biased Juror.* The right to trial by an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution.[1] To protect this right, a juror will be excused for cause if his views would " 'prevent or substantially

---

[1] *State v. Brett*, 126 Wn.2d 136, 157, 892 P.2d 29 (1995).

impair the performance of his duties as a juror in accordance with his instructions and his oath.' "[2]

■ Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."[3] The trial judge is in the best position to evaluate whether a particular potential juror is able to be fair and impartial based on observation of mannerisms, demeanor, and the like.[4] We therefore review denial of a for-cause challenge for manifest abuse of discretion.[5]

During voir dire in Gonzales' trial, the attorneys asked whether jurors knew of any reason they might have for not sitting on the jury, or if there were any reason a juror might be biased in favor of certain types of testimony. Defense counsel specifically asked jurors about the credibility of police officers. One juror stated she would find it difficult to disbelieve a police witness:

DEFENSE: Is there anyone else . . . who thinks that a police officer's testimony might influence them just because they are police officers?

. . .

JUROR 11: Just the way I was brought up—I know it's very naïve, but the way I was brought up, the police are always, you know—unless they are proven otherwise, they are always honest and straightforward, and tell the truth. So I would have a very difficult time deciding against what the police officer says.

DEFENSE: Okay. So you would presume the police officer was telling the truth? If it came down to—let's say,

---

[2] *State v. Hughes*, 106 Wn.2d 176, 181, 721 P.2d 902 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985)).

[3] RCW 4.44.170(2).

[4] *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991); *see also State v. Witherspoon*, 82 Wn. App. 634, 637, 919 P.2d 99 (1996) (denial of a challenge to a juror for cause is within the trial court's discretion).

[5] *State v. Fire*, 145 Wn.2d 152, 158, 34 P.3d 1218 (2001).

hypothetically, if it came down to a police officer's word versus Daniel Gonzales's word, okay, and you're trying to assess which one of them is telling the truth, correct me if I'm wrong, but I hear you saying that you would presume the police officer was telling the truth?

JUROR 11: Yes, I would.

DEFENSE: What if the Court instructed you that it's actually the opposite, that you're supposed to presume that the defendant is innocent unless and until the State, through its witness, the police officer, can prove to you otherwise?

JUROR 11: . . . I don't know. It's going to be back there. That's just the way I was raised. I don't know if I could keep those separate. I don't think—I don't know if I could.[6]

Later, the following exchange occurred:

STATE: Then when an officer testifies and you're assessing his or her credibility, the fact that he or she is a police officer is one of the things, like their tone of voice, the consistency, and their body language that you use to assess, does that one factor that he or she is an officer testifying in any way relieve the State of its burden of proving that Mr. Gonzales is guilty of the crime with which he has been charged?

JUROR 11: No.

STATE: So, in your mind, does he still have a presumption of innocence regardless of the fact that it is an officer that has taken the stand to testify?

JUROR 11: I don't know.

STATE: Do you want me to come back to you?

JUROR 11: Yeah.

STATE: I don't want to be like Regis and have that be your final answer yet. . . .[7]

---

[6] Report of Proceedings (RP) (Sept. 7, 2000) at 127-29.

[7] RP (Sept. 7, 2000) at 133-34.

No further questions were asked of Juror 11.

Gonzales later challenged Juror 11 for cause. The court denied the challenge without comment. Defense counsel then used all but one of his peremptory challenges to remove other potential jurors. Juror 11 was seated on the jury and went on to deliberate.

We have considered several similar cases. In *State v. Witherspoon*,[8] a juror admitted he was prejudiced against African Americans charged with dealing drugs:

> "When what you see in the newspaper, I have to admit I'm a little bit prejudiced. I see a lot of black people who are dealing drugs. When drugs are dealt, that's who is involved unfortunately. I can't help it. I'm sorry. I'm that way. I see it in the papers all the time, and I can't help but be influenced."[9]

We held that the juror had demonstrated actual bias, because the "very issue on which [the juror] was being asked to pass was whether Mr. Witherspoon, an African American, possessed drugs[,]" and that attempts to rehabilitate the juror did "not go far enough to mitigate a categorical statement by [the] juror that he is prejudiced against African Americans."[10] We held the trial court abused its discretion in failing to excuse the juror.

We also found actual bias in *State v. Fire*,[11] where potential jurors in a child molestation case were asked if there was any reason they might have for not sitting on the jury. One potential juror responded, " 'I consider him a baby raper, and it should just be severely punished. I'm very opinionated when it comes to this kind of a crime.' "[12] We held the prosecutor's attempt to rehabilitate the juror insufficient to overcome the juror's actual bias:

---

[8] 82 Wn. App. 634, 637, 919 P.2d 99 (1996).

[9] *Witherspoon*, 82 Wn. App. at 637-38 (quoting Report of Proceedings).

[10] *Witherspoon*, 82 Wn. App. at 638.

[11] 100 Wn. App. 722, 998 P.2d 362 (2000), *rev'd on other grounds*, 145 Wn.2d 152 (2001).

[12] *Fire*, 100 Wn. App. at 724 (quoting Report of Proceedings (Nov. 3, 1998) at 75).

We do not say that a juror whose initial responses indicate actual bias can never be rehabilitated by affirmative responses to thorough and thoughtful inquiry. . . . But appellate deference to trial court determinations of the ability of potential jurors to be fair and impartial is not a rubber stamp. . . . We find nothing in the potential juror's one-word affirmative responses to the series of rehabilitative questions that indicates he had come to understand that he must lay his preconceived notions aside, in order to serve as a fair and impartial juror.[13]

■ Like the jurors in *Witherspoon* and *Fire*, Juror 11 unequivocally admitted a bias regarding a class of persons (here, a bias in favor of police witnesses) and indicated the bias would likely affect her deliberations. Juror 11 also candidly admitted she did not know if she could presume Gonzales innocent in the face of officer testimony indicating guilt. And like the jurors in *Witherspoon* and *Fire*, Juror 11 was not rehabilitated. Indeed, here no rehabilitation was attempted.

A prospective juror's expression of preference in favor of police testimony does not, standing alone, conclusively demonstrate bias. The State points to *State v. Gosser*.[14] There, a retired state patrolman in the venire stated that if an issue could be resolved only by assessing the credibility of a police officer versus that of the defendant, he would believe the officer's testimony over the defendant's. But he also indicated he would presume the defendant innocent, and would not automatically believe everything a witness said just because the witness was an officer. In affirming the conviction, the *Gosser* court noted that although the prospective juror's answers in voir dire suggested a preference in favor of police testimony, the juror also made clear that he was able to set these notions aside because he under-

---

[13] *Fire*, 100 Wn. App. at 728-29.

[14] 33 Wn. App. 428, 656 P.2d 514 (1982).

stood the presumption of innocence and had an open mind on the issue of guilt.[15]

By contrast, Juror 11 not only admitted that she would have a "very difficult" time disbelieving a police officer, she admitted she was not sure she could afford Gonzales the presumption of innocence if an officer testified. Further, in *Gosser* the prospective juror's bias was effectively neutralized by further questioning, whereas no such rehabilitation occurred here. At no time did Juror 11 express confidence in her ability to deliberate fairly or to follow the judge's instructions regarding the presumption of innocence. Juror 11 demonstrated actual bias, and the trial court erred in rejecting Gonzales' cause challenge.

■ When a defendant is denied his or her constitutional right to a fair and impartial jury, the remedy is reversal. Our Supreme Court in *Fire* recently described a defendant's options as follows:

> [I]f a defendant believes that a juror should have been excused for cause and the trial court refused his for-cause challenge, he may elect not to use a peremptory challenge and allow the juror to be seated. After conviction, he can win reversal on appeal if he can show that the trial court abused its discretion in denying the for-cause challenge.[16]

Juror 11 should have been excused. Gonzales is entitled to a new trial.

■ *Prosecutorial Misconduct.* Gonzales argues, and we agree, that the prosecutor committed misconduct in closing argument. We address the issue to ensure it does not arise on remand.

In closing, the prosecutor disparaged the role of defense counsel and sought to "draw a cloak of righteousness" around the State's position:

---

[15] *Gosser*, 33 Wn. App. at 434.

[16] *Fire*, 145 Wn.2d at 158. *See also United States v. Martinez-Salazar*, 528 U.S. 304, 316, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000) (seating of a juror who should have been dismissed for cause requires reversal).

STATE.  I have a very different job than the defense attorney. I do not have a client, and I do not have a responsibility to convict. I have an oath and an obligation to see that justice is served.

DEFENSE: Objection. Misconduct. As if I'm not out to seek justice, too.

COURT:  Overruled.

STATE:  The defense has an obligation to a client.

DEFENSE: Objection.

COURT:  Counsel, that objection is not well taken. It's overruled.

STATE:  Thank you. [Defense counsel] has a client to represent, I don't. Justice, that's my responsibility and justice is holding him responsible for the crime he committed . . . .[17]

A nearly identical argument was held improper by the Fifth Circuit court in *United States v. Frascone*.[18] There, in rebuttal argument, the prosecutor stated: " 'Let me point out something to you, Ladies and Gentlemen. I take an oath to see that justice is done. They take an oath to represent their client zealously.' "[19] At this point, Frascone's attorney interrupted and objected, the objection was sustained, and the district judge directed the jury to disregard the prosecutor's comment. The Circuit Court held the argument constituted misconduct: "This is an improper statement; it seeks to draw the cloak of righteousness around the prosecutor in his personal status as government attorney and impugns the integrity of defense counsel."[20] Because of the trial court's immediate corrective instruction, however, the court concluded the remark did not require reversal.[21]

Here, the effect of the improper argument was not corrected by an instruction but rather was compounded when

---

[17] RP (Sept. 13, 2000) at 548.

[18] 747 F.2d 953 (5th Cir. 1984).

[19] *Frascone*, 747 F.2d at 957 (quoting Report of Proceedings).

[20] *Frascone*, 747 F.2d at 957-58.

[21] *Frascone*, 747 F.2d at 958.

284

the court overruled Gonzales' objection and stated "that objection is not well taken."[22] This allowed the prosecutor to continue to develop her theme—in effect giving additional credence to the argument and further establishing in the jurors' minds the false notion that unlike defense attorneys, prosecutors take an oath to "see that justice is served." Such an argument clearly has the potential to affect a verdict, which would necessitate reversal.[23] Whether it did so here, we need not decide. But it should not be repeated on retrial.

We reject Gonzales' other assignments of error.

Reversed and remanded for new trial.

BECKER, C.J., and AGID, J., concur.

---

[22] RP (Sept. 13, 2000) at 548.

[23] *See State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984).