# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67913-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ALFONSO V. SENIOR, JR., | ) | |
| Appellant, | ) | |
| and | ) | |
| ANTOINE SENIOR, and each of them, | ) | |
| Defendant. | ) | FILED: April 22, 2013 |

GROSSE, J. — Once a trial court has made a threshold decision that there are sufficient facts from which a reasonable person could conclude that a defendant made an adoptive admission, the question of whether or not the defendant did so becomes one for the jury. Here, the trial court held a preliminary hearing and, after hearing the evidence, correctly determined that there was sufficient evidence to submit the question to the jury. We affirm the trial court.

Several people were at a bar in Tacoma. After closing, the victim, Darrell Deon Webster, and Alfonso Senior scuffled in the parking lot. When a security guard approached, Webster and Senior left with their own group of friends. Several groups from the bar arrived at a Chevron gas station in Federal Way, including those who were with Webster and Senior. Webster was shot and killed. An eyewitness identified Senior as the shooter both from a photomontage and in court. Several other witnesses were present at the scene, but did not specifically identify Senior as the shooter.

The State charged Senior with second degree intentional murder and, alternatively, with second degree felony murder and second degree unlawful possession of a firearm. Additionally, the State requested a firearm enhancement for sentencing purposes.

Senior's defense was one of general denial and mistaken identification. The jury found Senior guilty as charged. Senior appeals, contending that the trial court improperly admitted hearsay testimony as an adoptive admission. Senior also raises juror bias and double jeopardy issues in his statement of additional grounds.

At trial, the State sought to introduce evidence of a conversation between Senior and his cousin, Robert Swaggerty, in which Swaggerty asked Senior "[w]hy did [he] do that?" In response to Swaggerty's question, Senior shook his head as though responding that he did not know. The trial court held a hearing outside the presence of the jury to determine the admissibility and scope of the witness's proposed testimony. Prior to the hearing, the court advised both sides to review State v. Neslund.[1] At the hearing, Swaggerty's girlfriend, Franisa Johnson, testified that Swaggerty arrived at her house a few hours after the shooting. Johnson stated that Swaggerty appeared agitated. Swaggerty woke up early and together they watched the television news about the shooting. Shortly thereafter they went to Swaggerty's apartment. Swaggerty lived with Antoine, Senior's brother. Senior had stayed at their apartment. Before Swaggerty could say anything, Senior told his son to go outside and play. Swaggerty said, "Why did you do that?" Senior responded by silently shaking his head.

---

[1] 50 Wn. App. 531, 532, 749 P.2d 725 (1998).

At the conclusion of the hearing, the court determined that a reasonable person could conclude that Senior's shaking his head could indicate that he did not know why he shot the victim. The court based its decision on the agitated state of the declarant, watching the news, and the proximity in time to the event. Under these circumstances it would be reasonable for someone to find that the shaking of the head indicated Senior's not knowing why he shot the victim. This was a factual determination for the jury and defense could argue that the shaking of the head was nothing more than a response to Senior's action in sending his son outside to play. This, in fact, was what the defense argued.

Senior argues that the statement was ambiguous and thus inadmissible hearsay. Under ER 801(d)(2)(ii), a statement is not hearsay if it is offered against a party and is a "statement of which the party has manifested an adoption or belief in its truth . . . ." As noted by this court in State v. Neslund, a party-opponent may manifest adoption of a statement by words, gestures, or complete silence.[2] In Neslund, the wife was charged with murdering her husband. A witness recounted a conversation he had overheard between the wife and her brother describing to a third party how they had killed the victim and disposed of the body. The court admitted the brother's portion of the conversation against the wife on the theory that she had manifested a belief in the truth of his statements by not disagreeing with them.[3] Silence constitutes an adoptive admission if (1) the party-opponent heard the statement, (2) was able to respond, and (3) the circumstances were such that it is reasonable to conclude the party-opponent

---

[2] Neslund, 50 Wn. App. at 550-51.
[3] Neslund, 50 Wn. App. at 549.

3

would have responded "had there been no intention to acquiesce."[4] A trial court makes a threshold decision that there are sufficient facts from which a jury could conclude that the defendant made an adoptive admission, i.e., facts from which a jury could reasonably conclude that the defendant "actually heard, understood, and acquiesced in the statement."[5] The jury ultimately decides the question as the trier of fact.[6] The jury was given a limiting instruction to ignore the evidence, if the jurors did not find that Senior's silence was an adoptive admission. Under Neslund, the court was correct. We decline to accept Senior's invitation to overrule Neslund.

In his statement of additional grounds, Senior claims that a juror was biased against him and that he was subject to double jeopardy because he was found guilty for committing second degree murder and second degree felony murder for the single murder of Webster.

The right to a trial by an impartial jury is guaranteed by article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution. Senior claims that Juror 43 should not have been seated because the juror's son was shot and killed and that would bias the juror against him. If a biased juror is allowed to deliberate, the defendant is denied his constitutional right to trial by an impartial jury, requiring dismissal.[7]

Senior argues that this case is analogous to State v Gonzales, where the court reversed and remanded for a new trial because a juror who demonstrated unequivocal

---

[4] Neslund, 50 Wn. App. at 551.

[5] Neslund, 50 Wn. App. at 551 (quoting United States v. Moore, 522 F.2d 1068, 1076 (9th Cir. 1975)).

[6] Neslund, 50 Wn. App. at 551-52

[7] State v. Gonzales, 111 Wn. App. 276, 282, 45 P.3d 205 (2002).

bias toward the State was allowed to deliberate.[8] In Gonzales, a juror stated she was more likely to believe police testimony, repeated it several times, and responded that she did not know if she could presume the defendant, Gonzales, was innocent.[9] This court reversed, noting that the juror unequivocally admitted a bias regarding the police, believed the bias would affect her deliberations, did not know if she could presume that Gonzales was innocent in the face of officer testimony, and was never rehabilitated.[10] That is not the case here. Juror 43 never expressed a bias toward law enforcement and, unlike the juror in Gonzales, Juror 43 unequivocally said that she was comfortable with her ability to separate the loss of her son and would be able to weigh the evidence fairly to determine whether the defendant had committed a crime. Defense counsel did not ask the court to excuse Juror 43 for cause or because she showed actual bias.

Senior next argues that he was subject to double jeopardy because the jury found him guilty of both second degree murder and second degree felony murder. Second degree murder under RCW 9A.32.050(1)(a) and second degree felony murder under RCW 9A.32.050(1)(b) are alternative means of committing the single crime of second degree murder rather than separate crimes.[11] Where there are alternative ways to commit a crime, it is permissible to charge both alternatives in the same count. Senior was convicted of one crime only, second degree murder. Double jeopardy is not implicated.[12]

---

[8] 111 Wn. App. 276, 281, 45 P.3d 205 (2002).
[9] Gonzales, 111 Wn. App. at 278-79.
[10] Gonzales, 111 Wn. App. at 281.
[11] See State v. Fortune, 128 Wn.2d 464, 473-74, 909 P.2d 930 (1996) (Premeditated and felony murder have been defined as alternative means of committing murder in the first degree since Washington was a territory.).
[12] See State v. Ramos, 163 Wn.2d 654, 184 P.3d 1256 (2008).

Affirmed.

WE CONCUR: