**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45277-4-II |
| Respondent, | |
| v. | |
| RAUL THATER CASTRO, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Raul Castro was convicted of first degree theft and two counts of unlawful issuance of bank checks (UIBC). He argues on appeal that (1) the charging information provided insufficient notice of the first degree theft charge, (2) the prosecutor engaged in prosecutorial misconduct, and (3) the trial court erred in treating each of Castro's convictions as separate offenses for sentencing purposes. The State concedes, and we agree, that the information was insufficient as to the first degree theft charge. Therefore, we reverse the resulting conviction and dismiss that charge without prejudice. We reject Castro's other arguments and affirm his two UIBC convictions, but remand for resentencing.

FACTS

On two consecutive days – December 31, 2011 and January 1, 2012 – Castro wrote a check for $5,000 and deposited it into his TwinStar Credit Union checking account at an automatic teller machine (ATM) in Vancouver. Each time, the $5,000 was made immediately available to Castro, and he withdrew the full amount later each day in several transactions at

casinos and an ATM in La Center. Castro wrote the checks on a closed account, and they were dishonored. As a result, TwinStar suffered a loss of $10,024.23.

After police contacted Castro's family about the checks, Castro came to the police station. There he orally confessed to writing and depositing the two bad checks and then withdrawing the funds. He then wrote and signed a confession in the presence of police.

The State charged Castro with first degree theft and two UIBC counts. The proceedings were stayed pending Castro's participation in a pretrial diversion program. As part of the program, Castro met with diversion counselor Sheila Vann. At Castro's first meeting with Vann, he discussed his crimes and signed paperwork confessing to and detailing those crimes.

The State later moved to revoke the stay of proceedings when Castro failed to make restitution payments required by the diversion program. The trial court granted the motion, and the case went to trial. At trial, Vann testified as to her interactions with Castro and his signing of the written confession. The jury found Castro guilty on all counts.

At sentencing, Castro argued that all three convictions stemmed from the same criminal conduct. The trial court disagreed and treated each crime as a separate offense for purposes of calculating Castro's offender score. The trial court ultimately sentenced Castro to 90 days confinement.

Castro appeals his convictions and sentence.

## ANALYSIS

### A. INSUFFICIENT INFORMATION

Castro claims that the information provided insufficient notice of the first degree theft charge because it did not explain that the State was treating all of Castro's withdrawals as part of

2

a common scheme or plan for the purpose of aggregating the total amount of money he misappropriated. The State concedes this issue and recommends reversal of the theft conviction. We agree with the parties.

Former RCW 9A.56.030(1)(a) (2009)[1] provides that first degree theft constitutes the theft of property or services exceeding $5,000 in value. Under RCW 9A.56.010(21)(c), the State can aggregate a series of transactions that constitute theft in one count and use the aggregate value of the transactions in determining the degree of theft. Aggregation is permitted only if the State can show that the transactions are part of a criminal episode or a common scheme or plan. RCW 9A.56.010(21)(c). If the State aggregates value to reach a statutory value threshold, a common scheme or plan is an essential element of a crime that must be included in the information. *See State v. Rivas*, 168 Wn. App. 882, 890-91, 278 P.3d 686 (2012), *review denied*, 176 Wn.2d 1007 (2013) (applying the rule to second degree malicious mischief charge).

Here, the State charged Castro with first degree theft. Because each check was for exactly $5,000, the State had to aggregate the amounts of both checks in order to meet the $5,000 threshold for first degree theft. However, Count 1 (first degree theft) of the information does not mention or imply a common scheme or plan, and no fair reading of the information reveals that necessary element. Therefore, we hold that the information was insufficient as to Count 1,

---

[1] RCW 9A.56.030 was amended in 2012 (LAWS OF 2012, ch. 233, § 2) and again in 2013 (LAWS OF 2013, ch. 322, § 2). These amendments do not affect the subsection cited.

3

reverse Castro's conviction for first degree theft, and dismiss that charge without prejudice.[2]

B.    PROSECUTORIAL MISCONDUCT

Castro argues that the prosecutor engaged in prosecutorial misconduct, infringing his constitutional right to a fair trial. He asserts that the prosecutor (1) argued facts not in evidence, (2) misstated the law, and (3) inappropriately disparaged defense counsel. He also argues that the cumulative effect of this misconduct requires reversal. We reject the first of these misconduct claims because Castro waived it by failing to object below, and we reject the other claims because the conduct at issue was not improper.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We examine the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

---

[2] The State asks for reversal and remand. But the case law establishes that dismissal without prejudice is the correct remedy where the charging document provides insufficient notice of a required element. *State v. Brown*, 169 Wn.2d 195, 198, 234 P.3d 212 (2010); *Rivas*, 168 Wn. App. at 887.

However, a defendant waives any error by failing to object to the prosecutor's improper conduct, unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. In assessing whether a failure to object should operate as a waiver, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. Therefore, to avoid waiver the defendant must show that no curative instruction would have eliminated the prejudicial effect of the prosecutor's conduct. *Id.* at 760-61. This is the case only where the misconduct "engendered an incurable feeling of prejudice in the mind of the jury." *Id.* at 762.

1. Arguing Facts Not in Evidence

Castro argues that the prosecutor committed misconduct by bolstering Vann's credibility during closing argument using facts not in evidence. Although we agree that this argument was improper, Castro did not object to the prosecutor's argument at trial. Because a curative instruction would have prevented any prejudice, we hold that Castro waived his misconduct claim.

It is improper for a prosecutor to submit to the jury during closing argument facts not admitted as evidence during the trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704-05, 286 P.3d 673 (2012). It is particularly improper to bolster a witness's credibility at closing argument with facts not in evidence. *See State v. Jones*, 144 Wn. App. 284, 293-94, 183 P.3d 307 (2008).

Castro primarily argues that the prosecutor committed misconduct by arguing that Vann should be believed because she would suffer professional repercussions for allowing an

5

intoxicated client to sign a confession statement. One of the key issues at trial was whether Castro had been intoxicated at the time he signed the confession in Vann's presence. Vann testified that Castro appeared to be sober and lucid when he signed the confession. But she did not testify as to whether she could or would suffer professional repercussions for allowing an intoxicated client to write and sign a confession, and the State produced no evidence of any such repercussions.

During closing argument, the prosecutor argued to the jury that the witness should be believed because her employment status depended on it:

> Sheila Vann is - - works for the county. Her job is on the line. She had someone write a confession; they better know what's going on, they better understand it, or she can be in trouble if she has an intoxicated person or someone who doesn't understand signing a written confession under penalty of perjury.

Report of Proceedings (RP) at 254. When viewed in context, it appears the prosecutor was asking the jury to consider the general possibility of professional repercussions. But even this sort of generalized inferential argument constitutes improper bolstering. *See Jones*, 144 Wn. App. at 293-94.

Castro also argues that the prosecutor committed misconduct by telling the jury Vann had prior experience with intoxicated clients lying about their intoxication. In arguing that Vann was especially perceptive of intoxication due to her professional experience as a probation officer, the prosecutor stated:

> She's a probation officer. She probably had a lot of clients try to tell her they weren't intoxicated, and she could tell if they were.

RP at 262. Vann testified that she had been a probation officer and had dealt with intoxicated clients, but she never mentioned any intoxicated clients telling her they weren't intoxicated. Once again, the prosecutor's argument was not based on any evidence and was improper.

However, Castro did not object below to either portion of the prosecutor's argument. He therefore waived his claim if a curative instruction would have eliminated any resulting prejudice. *See Emery*, 174 Wn.2d at 760-61. Here, if Castro had objected the trial court could have struck the prosecutor's arguments from the record and instructed the jury to disregard any arguments that the evidence did not support. This would have cured the prejudice. Therefore, we hold that Castro waived his right to claim misconduct on the basis of these statements.

2. Misstating the Law

Castro argues that the prosecutor committed misconduct by telling the jury it could not find Castro not guilty because it felt bad for him. We disagree.

Castro argues that the prosecutor misstated the law by failing to account for the possibility of jury nullification. During closing argument, the prosecutor addressed jury instruction 1, which stated: "You must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you." Clerk's Papers at 18. The prosecutor noted that the defendant may be a sympathetic figure and then told the jury:

> You're not here to decide if he's a good guy. You're not here to decide if he's a bad guy. You're not here to decide based on sympathy for him.
>
> I ask you - - you to divorce yourself from emotion. I ask you to do it based on the facts and the law that were provided to you. . . . You cannot say "not guilty" because you feel bad for him. That's not in our system of justice, and that's not in these instructions you all agreed to - - to follow.

7

45277-4-II

RP at 256-57.

We hold that the prosecutor's argument was not improper. The prosecutor did not mischaracterize the jury instruction, but merely applied it to the type of sympathies that might reasonably arise among the jurors in this case.

Castro claims that the statement misstated the law because a jury can acquit for any reason. It is true that juries possess the *power* to acquit a defendant despite lacking any reasonable doubt as to the defendant's guilt. This is commonly known as jury nullification. *See generally* Andrew D. Leipold, *Rethinking Jury Nullification*, 82 VA. L. REV. 253 (1996). But that power does not stem from any legal right.[3] *State v. Brown*, 130 Wn. App. 767, 771, 124 P.3d 663 (2005). In fact, juries have a *duty* to find the defendant guilty if they determine that the State has proved its case beyond a reasonable doubt. *Id.* at 771. Therefore, a jury *can* engage in nullification but has no legal right to do so. The prosecutor in this case was doing little more than reminding the jury of their duty not to nullify. We hold that this argument was not improper.

3.    Disparaging Defense Counsel

Castro argues that the prosecutor committed misconduct by disparaging defense counsel during closing argument. We disagree.

---

[3] The power stems from courts' unwillingness to inquire into the content of jurors' deliberations. *State v. Elmore*, 155 Wn. 2d 758, 771, 123 P.3d 72 (2005). Because a court will not generally investigate jurors' reasons for reaching a particular verdict, jurors can agree to acquit on virtually any basis without court knowledge. *See id.* at 773-74. Jury nullification therefore is properly characterized as a byproduct of a court's limited ability to enforce jurors' legal duties, not as a legal right.

8

Disparaging the role of defense counsel during closing argument in order to make it appear that only the prosecutor is serving the cause of justice is improper prosecutorial conduct. *State v. Gonzales*, 111 Wn. App. 276, 282-84, 45 P.3d 205 (2002). A closing argument may not "draw the cloak of righteousness around the prosecutor in his personal status as government attorney and impugn[] the integrity of defense counsel." *Id.* at 283 (quoting *United States v. Frascone*, 747 F.2d 953, 957-58 (5th Cir. 1984)). The impropriety is rooted both in the promotion of the prosecutor as the champion of justice and the disparagement of defense counsel as an obstacle to justice. *See Gonzales*, 111 Wn. App. at 283-84.

Castro points to one of the prosecutor's statements during closing argument as improperly disparaging. After summarizing the State's evidence of Castro's guilt, the prosecutor said:

> Now, Defense is going to get up here, they're going to try to point out insufficiencies or problems with the State's case, and that's what they do. That's -- that's his job. That's what he's here for. But I want you to remember, the State doesn't have to prove the case beyond all doubt; it's beyond a reasonable doubt.
>
> . . . Defense is going to get into semantics. They're going to try to get you to chase them down the rabbit hole. I would ask that you remain focused on the fact that that bank is out $10,000.00, and [Castro] is responsible for it.

RP at 251-52.

The prosecutor did not attempt to convey the impression that the defense attorney was impeding the cause of justice. The prosecutor noted that it is the defense attorney's job to attack the State's case. But unlike the situation addressed in *Gonzales*, the prosecutor was not attempting to impugn the defense counsel's integrity. When viewed in context, the argument instead appears to have been an anticipatory framing of the defense argument. The prosecutor

9

implored the jury to remain focused on the State's overwhelming evidence instead of the defendant's argument. We hold that the prosecutor's argument was not improper.

### 4. Cumulative Error

Finally, Castro argues that even if none of the aforementioned conduct is sufficient to sustain his prosecutorial misconduct claim, the cumulative impact of the conduct deprived him of a fair trial. However, as stated above, the prosecutor engaged in misconduct only in arguing two facts not in evidence. Therefore, we hold that there was no "cumulative" error.

## C. OFFENDER SCORE

Castro argues that the trial court abused its discretion by treating his three convictions as separate offenses for purposes of calculating his offender score. Because we reverse the theft conviction, the only issue is whether the two UIBC offenses constitute the same criminal conduct. We hold that they do not because the crimes involved distinct criminal intent and were committed at different times.

When a defendant is convicted of multiple crimes, each is treated like a prior conviction for purposes of calculating the defendant's offender score unless the crimes constitute the same criminal conduct. RCW 9.94A.589(1)(a). A sentencing court must find that the crimes constitute the same criminal conduct if the crimes "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* If the defendant fails to prove any of those three elements, the crimes should not be considered the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

If the sentencing court finds that multiple crimes do not constitute the same criminal conduct, we will not disturb that finding unless the sentencing court abused its discretion or

misapplied the law. *Id.* at 536. Moreover, "[t]he statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act." *Id.* at 540 (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

Castro argues that he had the same criminal intent because both of the UIBC acts were in furtherance of a common goal. He points to *State v. Williams*, 135 Wn.2d 365, 369, 957 P.2d 216 (1998), in which we held that where multiple crimes require the same mens rea and are committed in an "uninterrupted sequence," each may fall within the same overarching criminal intent. However, the "uninterrupted sequence" discussed in *Williams* referred to a transaction comprising immediately successive acts without significant intervening time or conduct. 135 Wn.2d at 367-68. In contrast, Castro's two acts of writing a bad check were separated by an entire day. The criminal acts were not immediately successive, and Castro had to independently decide to continue his scheme after committing the first one. Because he chose to do so, the trial court appropriately assigned each a different criminal intent.

The offenses also did not occur at the same time. Castro cites *Williams* for the proposition that they need not have occurred at the exact same time and place. Although the court in *Williams* focused on the intent requirement, it held that two offenses that were not temporally simultaneous but were committed in immediate succession in the same location constituted the same criminal conduct. 135 Wn.2d at 367-69. But Castro, unlike the defendant in *Williams*, did not commit his offenses in immediate succession. In effect, Castro asks us to extend the holding in *Williams* and allow a two-day period to constitute the "same time." We decline because this would stretch the bounds of the statutory language and substantially broaden the range of offenses that may be considered part of the same criminal conduct.

11

45277-4-II

Castro asserts, and the State concedes, that the UIBC crimes involved the same victim – TwinStar. But because Castro cannot establish that the offenses involved the same criminal intent and occurred at the same time, we hold that the trial court did not abuse its discretion in treating each crime as a separate offense.

We reverse Castro's first degree theft conviction and dismiss the first degree theft charge without prejudice, affirm Castro's two UIBC convictions, and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

SUTTON, J.

12