# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JOHN WESLEY SUMMERS, JR.,<br><br>Appellant. | No. 53051-1-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, A.C.J. — John Wesley Summers, Jr. was convicted of two counts of third degree assault, one count of obstructing a law enforcement officer, and one count of resisting arrest. He appeals his judgment and sentence, arguing that (1) he was denied his constitutional right to a fair and impartial jury because two jurors were biased, (2) alternatively, he was denied the right to effective assistance of counsel because his counsel failed to inquire of the two jurors who indicated that they could not be fair and counsel failed to challenge them for cause, and (3) the trial court erred by imposing a legal financial obligation (LFO), the community supervision fee, despite finding him indigent.

We hold that Summers was not denied his constitutional right to a fair and impartial jury, his trial counsel was not ineffective, and the court did not err by imposing the community supervision fee. We affirm the judgment and sentence.

FACTS

The State charged Summers with two counts of third degree assault, one count of obstructing a law enforcement officer, and one count of resisting arrest. The case proceeded to a jury trial.

In voir dire, juror 45 stated that he "would side with the police more," because he was friends with a few police officers. Verbatim Report of Proceedings (VRP) at 96. Defense counsel later asked the following:

> Is there anyone who, given the situation where a police officer is testifying about his or her recollection of how an event unfolded[,] would give more deference to that police officer as an observer? And we're not talking about telling the truth versus not telling the truth. We're talking about their – their ability as an observer of an event to be accurate.

VRP at 148. Juror 45 answered that he would because police officers are "[t]rained observers, and they also take notes and they write a report after [an incident] happens, so right when it's fresh [in] their mind." VRP at 148. When defense counsel followed up by asking whether juror 45 would be more aligned with the police officer's ability to recollect an observation, juror 45 answered affirmatively. Jurors 1, 2, 3, 7, 10, 18, 22, 23, 25, 26, 32, and 35 all raised their cards in agreement when asked who agreed with juror 45's statement. All of these jurors were removed, whether for cause or by peremptory challenge, except for jurors 18 and 35. Juror 45 was also removed for cause.

Juror 18's only other comment was that he had connections with the criminal justice system, but he clarified that he did not think those connections would impact his ability to be fair and impartial. The record does not reflect that juror 35 made any additional comments. Defense counsel used five of his six peremptory challenges.

At trial, Washington State Patrol Trooper Jamie Gola testified that he stopped along I-5 to contact Summers who was walking along the side of the freeway. Gola told Summers that it was both illegal and unsafe for him to be on the freeway and offered to give Summers a ride. Summers questioned why it was illegal and then refused to get into Gola's car. Gola offered to stop traffic so Summers could cross the freeway to the nearby exit ramp, but Summers declined.

Gola called for backup and as Trooper Phillip Berg pulled up, Gola reached out to grab Summers. As Gola reached for him, Summers pulled away and punched Gola in the face. Berg then tackled Summers against the cable barrier. Summers hit Berg in the neck and shoulder area as the two were standing up. Summers eventually took off down the freeway, but was ultimately detained. In addition to this testimony, the dashboard camera footage from both patrol cars was played for the jury. Summers testified that he did not know the troopers' intentions.

The jury found Summers guilty of all charges. Summers was sentenced to 5 months of confinement followed by 12 months in community custody. In Summers's judgment and sentence, the court imposed a community supervision fee. Summers appeals his judgment and sentence.

ANALYSIS

I. RIGHT TO A FAIR AND IMPARTIAL JURY

Summers argues that his right to a fair and impartial jury was violated because jurors 18 and 35 were biased. We disagree.

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant the right to trial by an impartial jury. *State v. Gonzales*, 111 Wn. App. 276, 277, 45 P.3d 205 (2002). "[A] juror will be excused for cause if his views would 'prevent or substantially impair the performance of his duties as a juror in accordance

with his instructions and his oath.'" *Gonzales*, 111 Wn. App. at 277-78 (internal quotation marks omitted) (quoting *State v. Hughes*, 106 Wn.2d 176, 181, 721 P.2d 902 (1986)). The trial judge is best suited to determine whether a particular juror is "able to be fair and impartial based on observation of mannerisms, demeanor[,] and the like." *Gonzales*, 111 Wn. App. at 278. Thus, we review a trial court's decision to grant or deny a cause challenge of a potential juror for manifest abuse of discretion. *Gonzales*, 111 Wn. App. at 278.

A prospective juror may be excused for cause if the juror is actually or impliedly biased. RCW 4.44.170. Under RCW 4.44.170(2), "actual bias" is defined as, "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."

Summers likens this case to *Gonzales* where a juror exhibited actual bias by saying that she would find police testimony more credible, that her mindset would not shift throughout trial, and that she was unsure if the defendant would still enjoy the presumption of innocence if a police officer testified.

Here, the statements made and endorsed by Jurors 18 and 35 do not rise to the level of those made in *Gonzales*. 111 Wn. App. at 278-80. The context for the jurors' statements is important to evaluate whether jurors 18 and 35 were biased. They were asked about whether law enforcement officers are better observers than lay persons, not whether officers are more credible than lay persons. Juror 45 stated that he "would side with the police more," because he had friends who were police officers. VRP at 96. Defense counsel later asked the following:

Is there anyone who, given the situation where a police officer is testifying about his or her recollection of how an event unfolded[,] would give more deference to that police officer as an observer? And we're not talking about telling the truth versus not telling the truth. We're talking about their – their ability as an observer of an event to be accurate.

VRP at 148. Juror 45 answered that he would because police officers are "[t]rained observers, and they also take notes and they write a report after [an incident] happens, so right when it's fresh [in] their mind." VRP at 148. When defense counsel followed up by asking whether juror 45 would be more aligned with the police officer's ability to recollect an observation, juror 45 answered affirmatively. Jurors 1, 2, 3, 7, 10, 18, 22, 23, 25, 26, 32, and 35 all raised their cards when asked who agreed with juror 45's statement. All of these jurors were removed, whether for cause or by peremptory challenge, except for jurors 18 and 35. Juror 45 was eventually removed for cause.

Juror 18's only other comment was that he had connections with the criminal justice system, but he clarified that he did not think those connections would impact his ability to be fair and impartial. The record does not reflect that juror 35 made any additional comments.

Defense counsel specifically stated that he was not discussing the police officer's likelihood of telling the truth versus lying; rather, he explicitly stated that the question was solely addressing a police officer's ability to observe an event.

Given the context for the voir dire about law enforcement officers being better observers than lay persons, not about their credibility, and the juror's responses to that statement, Summers fails to show that jurors 18 and 35 could not be fair and impartial. Because, Summers fails to show that jurors 18 and 35 were biased, we hold that his argument fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Summers alternatively argues that he received ineffective assistance of counsel because his counsel failed to inquire of the two jurors who indicated that they could not be fair and because his counsel failed to challenge them for cause. We hold that Summers's trial counsel was not ineffective.

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review an ineffective assistance of counsel claim de novo. *Estes*, 188 Wn.2d at 457.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Estes*, 188 Wn.2d at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at 458. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Estes*, 188 Wn.2d at 458. Reasonable probability in this context means a probability sufficient to undermine confidence in the outcome. *Estes*, 188 Wn.2d at 458. We apply a strong presumption that defense counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. Because the appellant must show both prongs, a failure to demonstrate either prong will end the inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Summers claims that his counsel performed deficiently because "[i]t could never be considered reasonable for defense counsel to waive his client's right to trial by a fair and impartial jury." Br. of Appellant at 14. As discussed above, Summers fails to prove that jurors 18 and 35 were biased. Accordingly, there is no evidence in the record that Summers's counsel waived his right to trial by a fair and impartial jury. Counsel is presumed to have acted reasonably unless shown otherwise. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Therefore, because Summers fails to show the voir dire by his counsel was not conducted appropriately, his defense counsel did not perform deficiently. Accordingly, we hold that Summers's trial counsel was not ineffective.

### III. LFOs

Summers argues that the trial court erred by imposing a community supervision fee in his judgment and sentence. We disagree and hold that the trial court did not err.

Here, the trial court imposed a community supervision fee under RCW 9.94A.703(2)(d) which states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." The legislature has given the Department of Corrections (DOC) the authority to charge or waive the fee. Because DOC has the authority, we hold that the trial court did not err.

## CONCLUSION

We hold that Summers was not denied his constitutional right to a fair and impartial jury, his trial counsel was not ineffective, and because DOC has the authority to charge or waive the community supervision fee, the trial court did not err. We affirm the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, A.C.J.

We concur:

Worswick, J.

Melnick, J.