# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>    v.<br><br>JESSICA A. TURNBOUGH,<br><br>               Appellant. | No. 53921-7-II<br><br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — A jury convicted Jessica Turnbough of felony driving under the influence and bail jumping. She appeals, arguing that she was deprived of her rights under CrR 2.3(d) when an officer refused to provide a physical copy of a search warrant before conducting a blood draw. She also argues she was deprived of her right to an impartial jury when she was forced to use three peremptory challenges to dismiss biased jurors. Turnbough further argues that she should be resentenced for her bail jumping charge because RCW 9A.76.170 was amended after her conviction. Finally, Turnbough argues that the court incorrectly imposed legal financial obligations (LFOs) even after it found she was indigent and that the judgment and sentence form incorrectly states the statutory subsections she was convicted under. We affirm Turnbough's convictions, but we remand to the trial court to remove certain LFOs and for correction of the judgment and sentence.

FACTS

Trooper Robert Howson pulled over Turnbough after witnessing her cross over the fog line while driving below the speed limit. After speaking with Turnbough, Howson noticed she was slurring her speech, had droopy blood shot eyes, and lethargic mannerisms. He asked her to perform a field sobriety test, but she refused. Howson arrested Turnbough and transported her to a hospital for a blood draw.

Howson sought and received a warrant to draw Turnbough's blood. Turnbough demanded to see a copy of the warrant prior to her blood draw. Howson showed Turnbough part of the warrant on his laptop. The portion he showed Turnbough contained the judge's signature. He did not produce a physical copy because his printer was in his patrol car, but he told Turnbough that a copy would be provided after the blood draw.

Turnbough's toxicology results showed an alcohol concentration of 0.147 grams per 100 milliliters of alcohol, 1.1 nanogram per milliliter of Tetrahydrocannabinol (THC), 48 nanograms per milliliter of carboxy THC, 4.0 milligrams per liter of meprobamate, and 0.66 milligram per milliliter of trazodone. The State charged Turnbough with one count of felony driving under the influence.

Turnbough moved to suppress the toxicology evidence, arguing that the search was illegal because Howson lacked probable cause, Howson refused to produce a physical copy of the search warrant, and Turnbough was deprived of an attorney. The trial court denied the motion to suppress. Prior to trial, Turnbough failed to appear for an omnibus hearing and the State amended the information to include a charge of bail jumping.

During jury selection, Turnbough used peremptory challenges to dismiss three jurors after the trial court refused to dismiss them for cause. At the beginning of jury selection, the court asked the prospective jurors if any of them would be unable to accept the law as provided by the court regardless of what they believed the law should be. None of the challenged jurors responded. Turnbough challenged jurors 4, 5, and 17.

Juror 4 said he had a strong emotional response towards drunk driving. He stated that he had served in the military and lost unit members to drunk driving and that he had "a zero tolerance feeling" about drinking and driving. 1 Report of Proceedings (RP) at 54. When asked if he could remain impartial, he said, "The only thing I can say is the facts. If the facts are presented in the proper way, in the prevailing way of the truth is the only way I can decide. But underlying that I do have unconscionable biases already with drinking and driving because of that." 1 RP at 54.

Juror 5 stated he knew the prosecuting attorney and that this could "[p]otentially" affect his impartiality. 1 RP at 21. Later he said that he had experience working as a corrections deputy and worked with drug and alcohol abusers. Based on that experience, he believed people in jail for drug and alcohol often said what officers wanted to hear and that he was cynical as a result. Speaking more on his cynicism, he added, "So whether that's for the prosecution or defense may be hard to say." 1 RP at 56.

When juror 17 was asked whether she had personal experiences with drunk driving, she said her parents had been struck by a drunk driver when she was 12 and that they suffered significant injuries. She had previously said that a close friend had been killed by a drunk driver. Turnbough asked her if those events would prevent her from being impartial, and she responded, "I would hope not, but I don't know. To be totally honest, to dive into it, I really don't know." 1 RP at 51. Turnbough followed up, asking, "So you're not certain that you could be, you know,

3

impartial based on—" and juror 17 said, "No, not when I started hearing evidence. I don't know." 1 RP at 51. Later, juror 17 was asked if she would be able to follow the courts instructions and she answered yes.

The State made no effort to inquire further into juror 4's, 5's, or 17's statements. After the jurors were challenged for cause, the trial court stated that the jurors had advised that they could remain "fair and impartial." 1 RP at 86-87. Turnbough used peremptory challenges to dismiss jurors 4, 5, and 17.

The jury convicted Turnbough of felony driving under the influence. The verdict form listed three alternative means for conviction:

> QUESTION 1: Was the defendant Jessica Ann Turnbough under the influence of [sic] affected by intoxicating liquor, marijuana, or any drug?
>
> . . . .
>
> QUESTION 2: Was the defendant Jessica Ann Turnbough under the combined influence of or affected by intoxicating liquor, marijuana, and any drug?
>
> . . . .
>
> QUESTION 3: Did the defendant Jessica Ann Turnbough have sufficient alcohol in her body to have an alcohol concentration of .08 or higher within two hours after driving as shown by an accurate and reliable test of the defendant's blood?

Clerk's Papers (CP) at 82.

The jury's verdict was only unanimous for question three, the finding that she had an alcohol concentration exceeding .08 per RCW 46.61.502(1)(a). The judgment and sentence form stated that Turnbough was convicted under "RCW 46.61.502(1)(a)(b)(c)(6)(b)(ii)." CP at 106. The jury also convicted Turnbough of bail jumping.

During sentencing, the trial court stated, "The court will order that Ms. Turnbough pay only the $500 crime victim assessment." RP (July 24, 2019) at 19. However, the trial court

4

imposed a criminal filing fee and community supervision fees on Turnbough's judgment and sentence. Turnbough appeals.

## ANALYSIS

I.    PROVIDING COPY OF SEARCH WARRANT

Turnbough argues that the State violated her right under CrR 2.3(d) when Howson denied her request for a physical copy of the search warrant before her blood draw. We disagree.

### A.    Legal Principles

We review a trial court's factual findings on a motion to suppress as verities on appeal if supported by substantial evidence. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Where factual findings are undisputed, the issue may be determined as a matter of law. *State v. Kipp*, 179 Wn.2d 718, 726, 317 P.3d 1029 (2014). We review matters of law de novo. *Id.*

CrR 2.3(d) states in relevant part, "Execution and Return With Inventory. The peace officer taking property under the warrant shall give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken." (Emphasis omitted.) CrR2.3(d) does not require an officer to provide a copy of the warrant prior to conducting a search. *State v. Ollivier*, 178 Wn.2d 813, 852, 312 P.3d 1 (2013).

### B.    Analysis

Turnbough does not challenge any findings of fact, and instead argues that the trial court erred when it determined the police officer was not required to provide a copy of the warrant prior to Turnbough's blood draw.

Turnbough requests us to overrule or ignore *Ollivier*. However, she provides no authority that would empower us to do so. Because *Ollivier* is binding authority and applies to this case, we

hold that the State did not violate Turnbough's rights under CrR 2.3(d) when it failed to furnish a copy of the search warrant prior to conducting the blood draw.

## II.    RIGHT TO AN IMPARTIAL JURY

Turnbough argues that she was forced to use her three peremptory challenges on jurors that the court should have excused for cause, violating her right to an impartial jury under the Washington Constitution, which provides more protection than the United States Constitution. We agree that the trial court erred in failing to dismiss juror 4 for cause, but we disagree that this error entitles Turnbough to a new trial because juror 4 was not seated on the jury.

### A.    Denial of For Cause Challenges

Turnbough argues that the trial court should have granted his requests to strike jurors 4, 5, and 17 for cause. We agree regarding juror 4 but not regarding the other two jurors.

#### 1.    Legal Principles

We review a trial court's denial of a juror challenge for cause for an abuse of discretion. *State v. Munzanreder*, 199 Wn. App. 162, 176, 398 P.3d 1160 (2017). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997).

A trial court provides the protections of an unbiased jury by dismissing jurors who are biased. *See* RCW 2.36.110.

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

RCW 2.36.110.

A juror may be challenged due to actual bias, shown by "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that

the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). "'[E]quivocal answers alone do not require a juror to be removed when challenged for cause, rather, the question is whether a juror with preconceived ideas can set them aside.'" *Munzanreder*, 199 Wn. App. at 176 (quoting *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991)). A party can rehabilitate a biased juror if a "thorough and thoughtful inquiry" shows they are capable of unbiased decision making regarding the case. *State v. Gonzales*, 111 Wn. App. 276, 281, 45 P.3d 205 (2002). The party claiming bias must provide proof that shows more than a possibility of prejudice. *Gonzales*, 111 Wn. App. at 281.

2. Analysis

Turnbough argues that juror 4's statements during jury selection showed he was biased against drinking and driving. We agree. Juror 4 admitted to a bias that would influence his interpretation of the facts. His statement shows an unequivocal inability to remain impartial. The trial court determined that juror 4 "advised he could remain fair and impartial," but the State fails to show how the record supports that decision. 1 RP at 87. The State could have attempted to rehabilitate juror 4 via a thorough and thoughtful inquiry, but it failed to do so. Absent an affirmative statement from juror 4 that he could remain impartial, the trial court's decision that juror 4 was unbiased is based on untenable grounds. The trial court abused its discretion by failing to dismiss juror 4 for cause.

Turnbough also argues that jurors 5 and 17 were biased and should have been dismissed for cause. However, the record shows their statements were equivocal. Juror 5 said his familiarity with the prosecuting attorney could "potentially" impact his judgment, and later he said that his cynicism would neither benefit the defense nor the prosecution. 1 RP at 21, 56. Neither statement

indicates a bias that mandates dismissal. Similarly, while juror 17 said that she was "not certain" she could be impartial, later she said she could follow the court's instructions on interpreting the facts. 1 RP at 51, 63. Juror 17's responses also do not show bias mandating removal for cause.

B. Entitlement to New Trial

Turnbough argues that she is entitled to a new trial because she was forced to use a peremptory challenge on juror 4. We disagree.

1. Legal Principles

The Supreme Court in *State v. Fire* held that there is no right to a new trial under the Fifth Amendment to the United States Constitution if a party uses a peremptory challenge to dismiss a biased juror. 145 Wn.2d 152, 159, 34 P.3d 1218 (2001). The mere use of a peremptory challenge on a juror that should have been dismissed for cause is insufficient to prove a claim that a party was deprived of their right to an impartial jury. *Id.*

Turnbough argues that article I, sections 21 and 22 of the Washington Constitution provide greater protection than the Fifth Amendment. She essentially claims that she has a constitutional right not to use her peremptory challenges on jurors that should have been stricken for cause.

When a party claims the Washington Constitution provides more protections than the United States Constitution, we conduct a *Gunwall*[1] analysis to evaluate the claim. *Munzanreder*, 199 Wn. App. at 172. The six *Gunwall* factors are: (1) the textual language of the state constitution, (2) significant differences in the texts of parallel provisions of the federal and state constitutions, (3) state constitutional and common law history, (4) preexisting state law, (5) differences in structure between the federal and state constitutions, and (6) matters of particular state interest or local concern. *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986).

---

[1] *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986).

Article I, section 21 of the Washington State Constitution states that "the right of trial by jury shall remain inviolate." Article I, section 22 states in relevant part, "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." Such right "requires a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Boiko*, 138 Wn. App. 256, 260, 156 P.3d 934 (2007).

2.      Analysis

Turnbough asks us to conduct a *Gunwall* analysis of article I, sections 21 and 22 and conclude that they offer more protection than the United States Constitution. However, we already conducted this analysis in *Munzanreder*, and held that the Washington right to an impartial jury provides the same protection as the United States Constitution. 199 Wn. App. at 172. Accordingly, we decline to reanalyze this issue, and we evaluate Turnbough's claims under existing law.

Even though juror four should have been dismissed *for cause*, he was nevertheless dismissed from the jury by Turnbough's use of her peremptory challenges. Turnbough does not argue that a biased juror was actually empaneled. Because Turnbough has not shown a biased juror was empaneled and that she was therefore deprived of her right to an impartial jury, she is not entitled to a new trial. *See Fire*, 145 Wn.2d at 159.

III.     RETROACTIVE APPLICATION OF AMENDED RCW 9A.76.170

Turnbough argues that RCW 9A.76.170 as amended in July 2020 should apply retroactively to her case. We disagree.

In a recent case, this court determined that the amendments to RCW 9A.76.170 do not apply to crimes committed prior to its enactment. *State v. Brake*, 15 Wn. App. 2d 740, 743-46,

476 P.3d 1094 (2020). For that reason, we hold that RCW 9A.76.170 as amended does not apply to Turnbough.

IV.    LEGAL FINANCIAL OBLIGATIONS

Turnbough argues, and the State concedes, that the trial court incorrectly imposed the criminal filing fee and community custody supervision fee as LFOs. She also argues, and the State concedes, that the trial court should specify that her LFOs cannot be satisfied from her federal supplemental security income. We agree.

RCW 10.01.160(3) states in relevant part, "(3) The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3) (a) through (c)." Because the court found that Turnbough was indigent, imposition of the criminal filing fee was improper under RCW 10.01.160(3).

The trial court may impose discretionary community custody supervision fees under RCW 9.94A.703(2)(d) even if a defendant is indigent. *State v. Spaulding*, 15 Wn. App. 2d 526, 537, 476 P.3d 205 (2020. However, the State concedes that the trial court did not intend to impose any other discretionary LFOs because the court stated that it was only imposing the crime victim penalty assessment.

Finally, under federal law, social security benefits cannot be used to pay legal financial obligations. *See* 42 U.S.C. § 407(a); *State v. Catling*, 193 Wn.2d 252, 260, 438 P.3d 1174 (2019). The State agrees.

We remand to trial court to remove the criminal filing fee and the community custody supervision fee from the judgment and sentence. The trial court should also clarify that Turnbough's LFOs cannot be satisfied through her federal supplemental security income.

V.    SCRIVENER'S ERRORS

Turnbough argues that the trial court erred in indicating she was convicted under RCW 46.61.502(1)(b) and (c) because the jury was only unanimous under RCW 46.61.502(1)(a). We agree.

A scrivener's error is one that, when amended, would correctly convey the intention of the trial court, as expressed in the record at trial. *State v. Priest*, 100 Wn. App. 451, P.2d 452 (2000). The amended judgment should either correct the language to reflect the trial court's intention or add the language that the trial court inadvertently omitted. *State v. Snapp*, 119 Wn. App. 614, 627, 82 P.3d 252 (2004). The remedy for a scrivener's error in a judgment and sentence is to remand to the trial court for correction. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016); CrR 7.8(a).

> A person can be convicted of felony driving under the influence if:
>
> (1) A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle within this state:
> (a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
> (b) The person has, within two hours after driving, a THC concentration of 5.00 or higher as shown by analysis of the person's blood made under RCW 46.61.506; or
> (c) While the person is under the influence of or affected by intoxicating liquor, marijuana, or any drug.

RCW 46.61.502(1)(a)-(c).

The trial court erred in stating that Turnbough was convicted under RCW 46.61.502(1)(b)-(c) on the judgment and sentence because the jury only convicted Turnbough under RCW 46.61.502(1)(a). The State concedes that the judgment and sentence is incorrect. Therefore, we remand for the trial court to correct this scrivener's error.

11

CONCLUSION

We affirm Turnbough's convictions, but we remand to the trial court to remove certain LFOs and to correct the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, P.J.

_____
Cruser, J.